James L. FLEMISTER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16781.

United States Court of Appeals
Fifth Circuit.

Oct. 31, 1958.

James M. Roberts, William G. Grant, Atlanta, Ga., for appellant.

Eugene Emerson, Atty., Dept. of Justice, Tax Division, Washington, D. C., James W. Dorsey, U. S. Atty., Atlanta, Ga., John N. Stull, Acting Asst. Atty. Gen., Joseph M. Howard, Eugene Emerson, Attys., Dept. of Justice, Washington, D. C., Andrew F. Oehmann, Acting Asst. Atty. Gen., Joseph F. Goetten, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, John J. McGarvey, Asst. Attys. Gen., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a conviction for wilfully and knowingly attempting to evade and defeat United States income taxes covering the years 1949, 1950 and 1951. The prosecution's case was based on the net worth and non-deductible expenditures method of proof.

The principal errors asserted by appellant are: (1) that the court erred in not granting appellant's motion for a judgment of acquittal on Count One of the indictment (the year 1949) upon the ground that it was barred by the statute of limitations; (2) the court erred in not granting a motion for judgment of acquittal on the ground that the verdict was not supported by substantial evidence; (3) that the court erred in denying appellant's motion for new trial based on newly discovered evidence; and (4) that the court erred in admitting in evidence and in permitting the jury to have with it during its deliberations summaries and computations

prepared by the government agents which did not accurately reflect the evidence in the case.

The indictment was returned on June 14, 1956. The income tax return for the year 1949 was filed March 13, 1950. Asserting these facts, appellant filed a motion to dismiss this count of the indictment. This motion was overruled by the court. The case subsequently went to trial, at the conclusion of which appellant renewed his attack on Count One asking a directed verdict of acquittal on the ground that any offense therein charged had been barred by the six year statute of limitations. This motion was overruled by the trial court, and the court adhered to the ruling in denying appellant's motion for new trial. In the order of denial the court stated that the court took judicial notice "of the proceedings before the Commissioner on preliminary examination which have been transmitted to the Clerk of the District Court," the court having found as to such complaint as follows:

> "Rule 5(c) of the Federal Rules of Criminal Procedure [18 U.S.C.A.] have [sic] been construed to permit the District Court to take judicial notice of the proceedings before the Commissioner on preliminary examination which have been transmitted to the Clerk of the District Court. See White v. United States, 5 Cir., 216 F.2d 1, 4."

No evidence was introduced during the trial of the case or on the preliminary motion which would toll the statute of limitations under Section 26 U.S.C.A. (I.R.C.1954) § 6531.[1] Therefore, as the record stood when the case was submitted to the jury, the government had made no showing of facts sufficient to take the case from under the statute. As to the burden of proof in such a case see White v. United States, 5 Cir., 216 F.2d 1. In his motion for reconsideration of the order overruling the motion for new trial appellant asserted that no preliminary examination or proceedings before the United States Commissioner had taken place and no "complaint had been instituted" within the contemplation of the statute.[2] Although appellant asked the court to inquire into the facts by issuing a rule nisi, the court declined to do so and overruled the motion. Reference to the records of the Clerk of the District Court, of which the trial court said it took judicial notice, discloses no record of "proceedings before the Commissioner on preliminary examination," and in fact discloses nothing in the nature of a filed complaint. The only document in the record is an affidavit signed by the Internal Revenue Special Agent averring the truth of the facts which were subsequently made the basis of the 1949 indictment. It nowhere appears that this document was even "filed" in the office of the Commissioner, that a

---

1. " * * * Where a complaint is instituted before a commissioner of the United States within the period above limited, the time shall be extended until the date which is 9 months after the date of the making of the complaint before the commissioner of the United States."

2. "As the basis for the contention that no preliminary examination or proceedings were before the United States Commissioner, the Defendant avers that on March 5, 1956 on a form entitled a complaint to a United States Commissioner, Dick D. Elliott, who designated himself as Special Agent for the Bureau of Internal Revenue, went before Honorable Ross Arnold, United States Com-

missioner for this Honorable Court in the Atlanta Division, and swore to a complaint. The said Dick D. Elliott then took the said complaint form, put it in his pocket and left the United States Commissioner, who did not retain said complaint; nor a copy and said Commissioner did not make any record or notation of the same nor did he follow any proceedings; make any record or do anything with reference to the alleged complaint. The next time the alleged complaint turned up was when the same was filed on May 1, 1956 in the Clerk's office of this Honorable Court. The said United States Commissioner did not file the alleged complaint in the District Court."

warrant or summons was issued, or that notice of its existence was communicated to Flemister until after the indictment on June 14th.

■ We think it clear that the mere signing of this affidavit did not amount to the "institution" of a complaint before the Commissioner within the six year period. We find no appellate court decision supporting this proposition, but we think the reasoning of the District Court in United States v. Rully, D.C.D. Conn., 143 F.Supp. 283, is persuasive. This reasoning and conclusion was followed by the District Court in United States v. Jurzykowski, D.C.N.D.N.Y., 159 F.Supp. 7, 9.

■ We next deal with the contention that the verdict was not supported by substantial evidence. We think it clear that if all of the evidence which was admitted was legally admissible, this ground for appeal must fail. Proof of repeated understatements of income, coupled with the failure to keep adequate records when viewed in light of the evidence disclosing omission of specific large items of income, and when viewed in light of the fact that appellant was a lawyer and considering the indefinite and vague testimony given by appellant on the witness stand, would clearly be sufficient to support a verdict of guilty.

This brings us then to the question whether the court erred in the admission of evidence tendered by the government to prove the existence of greater net worth than could be accounted for by reported income on the returns filed for the prosecution years.

The first issue on this branch of the case relates to the use by the government of summaries and computations which purported to summarize testimony or documentary evidence produced in court and to translate such testimony into figures having tax significance. We do not have here the problem of using blown up charts or photostats in the presence of the jury, which was the subject of considerable discussion in the case of

Lloyd v. United States, 5 Cir., 226 F.2d 9, nor have we the question as to the admissibility of such summaries and computations "in evidence" provided they are accurate, which was one of the grounds for the reversal of a conviction in an income tax fraud case in Steele v. United States, 5 Cir., 222 F.2d 628. Here appellant concedes that "where such summaries and computations accurately reflect the evidence, they of course serve a most useful purpose and can in nowise prejudice the accused." Thus the only attack made on the use of the summaries and computations in this appeal is that the summaries were incorrect and the computations made from them thus were wrong.

The incorrectness asserted by appellant is twofold. The first is that the summaries included items in the net worth computations that could be identified as items of net worth only by hearsay evidence—that is the government agent testified that he knew of certain capital expenditures because of an independent investigation he had made of records not produced in court. The second is that the summaries included only the figures testified to by the government's witnesses and thus amounted to summaries of the government's *contention* only; that they did not give any effect to testimony on behalf of the defendant, which, if believed, would reduce substantially the accused's net worth in each of the years in question.

We have carefully read the testimony relating to the alleged failure of the government to prove some of the items by legally competent evidence, and conclude that in at least two and possibly three respects this point is well taken. As to an item of $380.50 in the summary for 1950, the court actually ruled it out on the objection of defendant that it was based on information obtained by the witness from books of Charles N. Walker Roofing Company, which were not in court. Nevertheless it remained in the summary. Another item of $430.50 listed for the year 1949 was testified to by

the agent as being evidenced by two checks signed by the accused payable to one Eubanks, but the purpose for which the expenditure was made was ascertained by an examination of Eubanks' books not in court and not otherwise testified to. A third item relating to a one-half interest in some farm property listed as an asset in 1949 was proved only partially by evidence given in open court. It thus appears that items totalling a substantial amount were included in the final computations which, in the state of the proof at the time the summaries were used and exhibited to the jury, had not met the standards circumscribing the use of such schedules.

█ The government contends that substantial accuracy is sufficient to meet the requirement of a summary. It points to errors favoring the accused and comments on the fact that no amount was added to Flemister's net worth for his and his wife's personal non-deductible expenses. It is quite possible that these items, if proved by witnesses in court and added to the summary, would have increased the net worth more than the total of the improperly proved items, but as to this we cannot speculate. Since the summary is intended to be a mathematically correct statement of what witnesses or documents have proved in the case, we cannot lightly say that the inclusion of clearly improper items in computing Flemister's net worth is not prejudicial.

██ A summary, to be admissible, we think need not give effect to the contentions of the accused. If, however, it purports to be a statement of all the evidence as to a certain account it cannot include only items against the interest of the accused. It must, in other words, be what it purports to be, either a summary of all sworn testimony or a summary of the testimony of certain witnesses. We commented in Lloyd v. United States, supra, on the need for properly identifying the source of the figures which make up the summary. We think the summaries used in this case did not

show that they represented only the testimony of government witnesses and were not a summary of all the relevant testimony, as is normally required in the use of a hypothetical question. The fact that such a summary deals only with testimony of certain witnesses or of all the witnesses on the government's side of the case can be stated on the written summaries, by the witness who identifies them and explains them, or by explanatory charge of the court when he tells the jury, as he should, that the schedules are not evidence of themselves, but merely a totalling or graphic representation in summary form of what one set of witnesses has said.

The second issue of this phase of the case arises from the fact, not testified to on the trial, but conceded by the government, for the purpose of this appeal, to be true that a $3500 liability was mistakenly omitted in the computation of appellant's net worth for the year 1951. A witness from a savings and loan association testified from his records that Flemister had a credit balance of $5,000 on deposit. This figure was added to his worth in the schedules. All parties assumed it to be correct.

After appellant's motion for new trial had been overruled on June 5, 1958, he filed a motion for new trial on the ground of newly discovered evidence on June 13th. On the following day he filed his notice of appeal. Thereafter the trial court declined to pass on the new trial motion because of the pendency of the appeal. This newly discovered evidence is a record of the savings and loan association showing that at the end of 1951 Flemister owed $3500 to the association, thus reducing his credit balance to $1500. This item, if proven on the trial, would have cut Flemister's alleged understatement of net income for that year by approximately one half. It is therefore a significant item.

█ We must now determine as best we may whether the record discloses real likelihood that such errors as occurred on the trial prejudiced the ac-

**518**

cused. The government says, as to the statute of limitations point, that it parallels a case in which after a trial and conviction on several counts and a general sentence not greater than permissible for a single count, it becomes apparent that there was no evidence to support a conviction on one of the counts. In such circumstances the courts generally hold that it will be presumed that the sentence is on only the good counts. We think this is not such a case. Where, by a trial of the limitation issue separately it should have been determined, as we have done, that the year 1949 was barred, it might well have been prejudicial to the defendant for the jury to hear evidence of understatements of income and computations of underpayment of tax as to the barred year in addition to those which were properly before it.

We have already stated that we cannot lightly dismiss the claim of prejudice resulting from the inclusion of improperly admitted items in the computations of net worth and the harmful effect of not properly identifying the schedules as summaries of the government's side of the case only. In light of these matters we think the innocent omission of the $3500 item, although doubtless due to appellant's own failure adequately to analyze his own accounts, becomes too significant to overlook.

The Supreme Court, in Holland v. United States, 348 U.S. 121, 129, 75 S.Ct. 127, 132, 99 L.Ed. 150, placed a special injunction on Courts of Appeals in net worth prosecutions, when it said:

" * * * Appellate courts should review the cases, bearing constantly in mind the difficulties that arise when circumstantial evidence as to guilt is the chief weapon of a method that is itself only an approximation."

■ We conclude, upon a careful review of the record, that justice requires that we reverse the conviction and remand the case for a new trial.

Reversed and Remanded.