John BARSKY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18865.

United States Court of Appeals
Ninth Circuit.

Dec. 7, 1964.

Thomas Whelan, San Diego, Cal., for appellant.

Thomas R. Sheridan, Acting U. S. Atty. for this case, Timothy M. Thornton, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, HAMLEY and DUNIWAY, Circuit Judges.

CHAMBERS, Circuit Judge:

Barsky has been convicted of filing false and fraudulent federal income tax returns for the years 1956, 1957, 1958 and 1959, four counts in all. On the first count, he was sentenced to a year in prison and a fine imposed. On the other counts, he was given probation for a term.

We think both parties would agree that if the conviction is good on one count, it is good on all: that if it is wrong on one, it is wrong on all. Stated another way, appellant's points on appeal are applicable equally to each count.

The government had serious problems in making a case. Apparently only in recent years had Barsky made any pretense of keeping books or having them kept for him. The prosecution based its case on the net worth method. By the end of 1959, Barsky had substantial assets. And their visibility, if they had previous existence, certainly steadily increased in the years 1956–1959 and so did his image as a successful entrepreneur in the restaurant business at San Diego.

Barsky's explanation of his newly observed wealth was that it was really an old hoard he had brought over from Russia as an immigrant in 1915 when he was 20 or 21 years old and that he had secreted it in trunks and suitcases and boxes over all the intervening years. Supposedly the hoard included Russian rubles of the day, later converted at rather indefinite places to American dollars, and a collection of precious stones, diamonds and rubies principally. Of course, the story was possible, but as told to the revenue agents before trial, and from the witness stand, even we as appellate judges, can say that one would have to search far and wide before finding anyone who would believe it.

We think the evidence under permissible inferences was overwhelming that a substantial amount of income must have been willfully omitted for the years in question. (One could never be sure how much.) We affirm.

Appellant's first three points: that the district court erred in permitting a summary prepared by the government's expert witness Klass to be circulated to the jury during the trial and erred in overemphasizing it, that it was error to permit the witness Klass to testify from the summary, and that the evidence was insufficient for the verdict can really all be considered together.

We simply do not find on the record any overemphasis of the exhibit (which was marked for identification) circulated to the jury while Klass testified. The chart was taken away from the jury when he finished testifying. And, we think that the jury was properly told that the exhibit presented no basic evidence.

Appellant complains first that the summary did not contain Barsky's version of his source of the money and, therefore, it was incomplete. Next he complains that the summary went too far and invaded the ultimate function of the jury. (We think the foregoing is a fair summary, although appellant might not agree.)

We do not believe the first proposition correct. To accept it would be to hold that if a defendant had an alibi, no matter how improbable, then no expert could prepare a summary of the evidence tending to prove guilt.[1] As to the second, we do not believe adding up the scraps of testimony and using the addition tables invade the function of jury. To think that the jury would feel bound to find a guilty verdict if it did not believe the basic testimony on which wit-

1. The opening net worth position on a government computation is extremely important. In our judgment, the opening net worth used here passed the rigid test of United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202.

ness Klass made his computations underestimates the normal intelligence of 12 men and women. We have re-examined Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150,[2] and have examined Flemister v. U. S., 5 Cir., 260 F.2d 513; Steele v. U. S., 5 Cir., 222 F.2d 628; Bernstein v. U. S., 5 Cir., 234 F.2d 475; U. S. v. Kiamie, 2 Cir., 258 F.2d 924; and U. S. v. Altruda, 2 Cir., 224 F.2d 935. We do not find Holland helps appellant and we do not believe the foregoing Fifth and Second Circuit cases are contrary on their facts to what we hold here. We think under U. S. v. Johnson, 319 U.S. 503, 519, 63 S.Ct. 1233, 1241, 87 L.Ed. 1546, the jury was left to the use of "its untrammeled judgment upon the worth and weight of [the] testimony. * * *" under proper instructions.

■ At the close of the government's case, there was enough evidence to go to the jury. Then came the defense. Defendant took the stand. The jury was entitled to conclude that defendant's story of his great earnings in Russia before he was 21 was fishy in the light of his claimed inability to make very much in the succeeding years (there is no doubt he has always been industrious) before he found some success in the restaurant business. They were entitled to look quizzically at each other about his stories of secreting his money, and to be a little contemptuous of his story that he sold newspapers and shined shoes in San Diego when he arrived from New York City in 1946 because he was afraid if he didn't do something like that he would be picked up for vagrancy, he a man with a hundred thousand or so in his suitcases and jeans, so he said. When the evidence closed, the jury was entitled to consider all of the evidence. It is too heady medicine to say that when a witness swears falsely to one material fact the entire affirmative burden of proof is sustained, but certainly when a witness relates a long, involved alibi, though possible but which is incredible and appears to cut across human experience, a lot of affirmative inferences can be drawn from the silliness of the story.

We think on the whole testimony the jury was entitled to conclude that Barsky's new affluence during the years in question must have come from the tills of his various businesses, mainly restaurants, and that it was income unreported to his accountant and to the government on the tax returns, which were the subject of the indictment. We hold the evidence was sufficient to find defendant guilty beyond a reasonable doubt.

■■ Barsky's ex-wife (she is now Mrs. Rose Frazer), who lived with him in New York from 1923 to 1941, turned up as a government rebuttal witness, and over his objection, told a story of a rather parlous existence during their marriage. They being divorced at the time of the trial, the question is not one of her competence to testify. The question is whether it was proper to receive her testimony on the events and circumstances she related. The defendant's objections look more like ones as to her competency to testify, but we give him the benefit of the doubt and assume the objections were sufficient. Under Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435, it is clear that communications between husband and wife inter sese survive as privileged after a divorce. We have read her testimony, and we think she only testified as to circumstances, occurrences and events of the marriage. She described their very modest living accommodations, told what he earned and where and when he worked, told about their laundry (they didn't wash the clothes) which consisted of a drop-off place which she ran and a route on which he solicited. She took store money to live on. He took the profit on the laundry route. She told how much they paid for the laundry. She claimed she supported the child out of the laundry store money. As close as it comes to confidential communications is when she said, "He was very stingy to me." She went on to relate that she never discovered any large-

---

2. The trial judge meticulously followed Holland, supra, in his instructions.

sums of cash around the house. Also, she testified that over many years they didn't get along very well. We find no invasion of confidential communications of husband and wife. See Cooper v. United States, 9 Cir., 282 F.2d 527, and Udall, Evidence, p. 143.

Judgment affirmed.