UNITED STATES of America,
Appellee,

v.

DeLayne Elmer LONG, Appellant.

No. 72–1128.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1972.

Decided Oct. 24, 1972.

Leonard F. Watkins, Jr., Russell Shultz, Wichita, Kan., for appellant.

Gary Wenell, Asst. U. S. Atty., Sioux City, Iowa, Evan L. Hultman, U. S. Atty., Robert L. Sikma, Asst. U. S. Atty., for appellee.

Before MATTHES, Chief Judge, LAY and HEANEY, Circuit Judges.

LAY, Circuit Judge.

Defendant, DeLayne Elmer Long, was charged and convicted for the

interstate transportation and sale of stolen cattle. Two separate indictments were filed. The first indictment contained two counts charging that 58 head of cattle allegedly stolen from Dalhart, Texas, on July 30, 1970, were transported by the defendant to Waverly, Iowa, and sold by him on August 4, 1970. The second indictment charged that 28 head of cattle, stolen in Mena, Arkansas, on January 24, 1971, were transported by the defendant to Waverly, Iowa, on January 26. The two cases were consolidated for trial. Defendant was found guilty on each count and given a three year concurrent sentence. He appeals on two basic grounds: [1] (1) that certain government exhibits were not produced before trial, pursuant to the court's order under Federal Rule of Criminal Procedure 16(b), in order to allow the defendant's pretrial investigation, and (2) that certain testimony and exhibits produced by defendant's former wife should have been excluded as confidential communications under a common law husband-wife privilege. We find no merit to these contentions and affirm the judgments of convictions.

■ Although the trial court indicated its disapproval for the government's failure to disclose to the defendant that some of the government's witnesses would utilize documentary evidence, the court nevertheless overruled the defendant's motion to suppress the exhibits. On the eve of trial the court did require the government to disclose the names of all of the witnesses and the essence of their testimony. The documentary exhibits included photographs and various documents including bills of sale relating to the various cattle involved. The court held that defendant was not materially prejudiced in the late disclosure of these items. Defendant acknowledged that he delivered the cattle to the Waverly Sales Barn on the two occasions and he was given, before trial, the bill of sale pertaining to the August 4 delivery involving the 58 head of cattle allegedly stolen in Texas. The two indictments informed him of the date of the theft as well as the location from which the cattle were originally taken. The photographs were taken of the cattle after he himself delivered them to Waverly. The late disclosure of the exhibits did not inhibit defense counsel from making a thorough investigation of the facts. We find no prejudicial error in the trial court's ruling.

Defendant does not challenge the sufficiency of the evidence. The cattle stolen from Arkansas were described by weight and color, and the evidence disclosed that a number was attached to each animal at the Sales Barn in Waller, Arkansas, on January 23, 1971. These descriptions and numbers matched the markings on the cattle delivered by the defendant in Waverly, Iowa, on January 26. The defendant, without explanation, admitted that the match-up was "no coincidence." The defendant, although claiming he was acting on behalf of other owners, sold the cattle on both occasions in his name. Although the evidence connecting the cattle stolen in Texas with those delivered by the defendant in July is not as convincing as the evidence identifying the Arkansas shipment in January, there were still strong circumstances pointing to the guilty knowledge of the defendant.

■ Defendant urges, however, that the trial court committed prejudicial error in not excluding his former wife's testimony concerning his confidential disclosure that he was going to Arkansas at the precise time that the cattle were taken. Mrs. Long's testimo-

---

1. Defendant also alleges that the district court erred in admitting the testimony of Clarence Duntz, an agent for the Kansas Bureau of Investigation, because the government failed to produce his investigative report. Neither Rule 16(b) of the Federal Rules of Criminal Pro-

cedure or § 3500 of Title 18 (Jencks Act) contemplates the production of this kind of report. Cf. United States v. Turner, 442 F.2d 1146 (8 Cir. 1971); Tarvestad v. United States, 418 F.2d 1043 (8 Cir. 1969), cert. denied, 397 U.S. 935, 90 S.Ct. 944, 25 L.Ed.2d 116 (1970).

ny reveals that this communication was given to her by the defendant as a personal matter. Cf. Blau v. United States, 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306 (1951). The law presumes that communications between husband and wife are intended to be confidential, and the burden rests with the government to rebut that presumption. See Blau v. United States, supra at 333, 71 S.Ct. 301.[2] Assuming that the district court erred in failing to exclude Mrs. Long's testimony, we, nevertheless, find this evidence to be harmless error.[3] Mrs. Long's testimony established that the defendant was gone at the time of the theft and that he had told her that he was going to Ft. Smith, Arkansas. When defendant took the stand *he did not attempt to rebut his former wife's testimony.* He admitted that he hauled the 28 head of cattle from Arkansas to Iowa at the time in question. He denied, however, that he stole them from Mena, Arkansas. Thus, the only issue for the jury to resolve was whether the defendant had knowledge that the cattle he transported from Arkansas to Iowa were in fact stolen cattle. Mrs. Long's testimony did not in any way incriminate him as to this issue. Thus, assuming error, we find that the admission was harmless.

The judgments of conviction are affirmed.

---

2. But cf. Rule 505 of the Revised Draft of the Proposed Rules of Evidence for the United States Courts and Magistrates. The Advisory Committee's Note reads:

"The rule recognizes no privilege for confidential communications. The traditional justifications for privileges not to testify against a spouse and not to be testified against by one's spouse have been the prevention of marital dissension and the repugnancy of requiring a person to condemn or be condemned by his spouse. 8 Wigmore Sections 2228, 2241 (McNaughton Rev. 1961). These considerations bear no relevancy to marital communications. Nor can it be assumed that marital conduct will be affected by a privilege for confidential communications of whose existence the parties in all likelihood are unaware. The other communication privileges, by way of contrast, have as one party a professional person who can be expected

to inform the other of the existence of the privilege. Moreover, the relationships from which those privileges arise are essentially and almost exclusively verbal in nature, quite unlike marriage. See Hutchins and Slesinger, Some Observations on the Law of Evidence Sec. 90; 8 Wigmore Sec. 2337 (McNaughton Rev. 1961). The parties are not spouses if the marriage was a sham, Lutwak v. United States, 344 U.S. 604 [73 S.Ct. 481, 97 L.Ed. 593] (1953), or they have been divorced, Barsky v. United States, 339 F.2d 180 (9th Cir. 1964), and therefore the privilege is not applicable."

3. Defendant additionally objected to two exhibits on which Mrs. Long wrote that defendant was gone "overnight." A spouse's *conduct* is not subject to the husband-wife privilege since it is not a confidential "communication."