**In re CANDOR DIAMOND CORP., Debtor.**

**JOHN P. MAGUIRE & CO., INC. and Daniel McColley, Trustee of Candor Diamond Corp., Debtor, Plaintiffs,**

**v.**

**Madeleine MARGOLIES and Scarsdale National Bank and Trust Company, Defendants.**

**Bankruptcy No. 81 B 11594 (EJR).**
**Adv. No. 81–5713–A.**

United States Bankruptcy Court, S.D. New York.

Sept. 25, 1984.

Stroock & Stroock & Lavan, New York City, for trustee.

O'Rourke & Degen, New York City, for defendant Madeleine Margolies.

## DECISION AND ORDER ON TRUSTEE'S MOTION TO COMPEL TESTIMONY

EDWARD J. RYAN, Bankruptcy Judge.

On March 21, 1980, Candor Diamond Corp. (Candor) entered into a factoring agreement with John P. Maguire & Co., Inc. (Maguire) in which Maguire agreed to purchase Candor's accounts receivable and advance monies to Candor in anticipation of the collection of the purchased accounts receivable. As collateral for these advances, Maguire was given a security interest in Candor's accounts receivable and inventory.

On August 10, 1981 an involuntary bankruptcy proceeding was commenced by Maguire against Candor pursuant to Chapter 7 of the Bankruptcy Code, and an interim trustee was appointed. At the same time as the bankruptcy filing, an investigation was commenced by the office of the United States Attorney for the Southern District of New York into the activities and whereabouts of Irwin and Madeleine Margolies, who had executed the agreement with Maguire as officers of Candor. Madeleine Margolies (Mrs. Margolies) had known since early Fall 1981 that she was the target of a federal investigation.

On October 27, 1981, after the bankruptcy proceeding was commenced, Maguire was advised that Mrs. Margolies had presented a check to Scarsdale National Bank in the sum of $180,000 drawn on Bank Cantrade A.G. of Zurich, Switzerland. This check was proffered by Mrs. Margolies in full payment and satisfaction of a Candor loan which was secured by a mortgage on her home in Scarsdale, New York. On October 30, 1981, an order to show cause was signed by this court temporarily enjoining the application of the proceeds of the Bank Cantrade check to the Scarsdale mortgage, and directing Scarsdale to transfer the proceeds of the check to the interim trustee.

The order to show cause was supported by an affidavit and documentary evidence alleging a fraud perpetrated upon Maguire and contending that Mrs. Margolies did not have sufficient income or personal assets to justify her possession of the sum of $180,000. Maguire contends that the Bank Cantrade check constitutes part of the proceeds of Candor's property, under Section 541 of the Bankruptcy Code, which was illegally and wrongfully taken and converted to the possession of Mrs. Margolies.

The order to show cause, which sought the issuance of a preliminary injunction, was returnable on November 4, 1981. Prior to the commencement of the preliminary injunction hearing, Mrs. Margolies, vigorously contesting the issuance of the preliminary injunction, submitted her sworn affidavit, which denied that she had any business involvement in Candor since November 1980, denied that the $180,000 check delivered to Scarsdale National Bank consisted of funds belonging to Candor, to herself, her husband or family, and alleging that she had borrowed the funds from a real estate company.

At the preliminary injunction hearing of November 4, 1981, Mrs. Margolies was called to the stand by Maguire, and testified for a short time until cut off by a request by her counsel for an adjournment. During the brief period of examination, Mrs. Margolies testified to her relationship with Candor before and after her resignation as an officer in the fall of 1980; that she had no knowledge of the financial workings of Candor; that she had no authority to sign checks for Candor; that she did not have possession of cancelled checks or bank statements of her personal checking accounts for July and August 1981; that she took a vacation to Israel with her husband in July-August, 1981 and that the only business transacted there was the sale of her diamond ring and earrings for $35,000; that from Israel they traveled to Munich, Germany, drove to Zurich, Switzerland and from there flew to Toronto, Canada, whence they drove to Detroit, Michigan, then flew to Tampa, Florida; that she had no recollection of receiving checks from Candor in a sum greater than $1,000, but that it was possible and that she had no source of income other than from Candor; and that she had no recollection of making sizable deposits to her personal checking

account but that all deposits to her checking account were made by her. (Transcript of 11/4/81).

At the conclusion of the preliminary injunction hearing on November 4, Mrs. Margolies was served with a subpoena pursuant to Bankruptcy Rule 205. At the examination, which took place on December 3, 1981, Mrs. Margolies refused to answer any questions, on the basis of the Fifth Amendment privilege against self-incrimination.

Meanwhile, Mrs. Margolies had defaulted in submission of an answer or motion in the underlying adversary proceeding. Thereafter she moved to vacate her default. Maguire cross-moved for a default judgment. In a memorandum decision dated June 11, 1982, this Court found that Mrs. Margolies failed to demonstrate that her default was the result of excusable neglect. 21 B.R. 144. Accordingly, a default judgment was entered on June 25, 1982, directing Scarsdale to turn over the proceeds of the $180,000 check to the trustee.

While the parties were contesting the default, Maguire had moved to compel the testimony of Mrs. Margolies on the ground that she had waived her Fifth Amendment privilege by her affidavit and prior testimony at the preliminary injunction hearing. In a memorandum decision dated June 22, 1982, this Court ruled on Mrs. Margolies' assertion of Fifth Amendment privilege, finding that Mrs. Margolies' sworn affidavit of November 3, 1981 constituted a voluntary offer of her version of the facts in the underlying litigation and would ordinarily constitute a waiver of her Fifth Amendment privilege; and similarly, that Mrs. Margolies' testimony offered at the November 4, 1981 preliminary injunction hearing (hearing) would ordinarily have caused a forfeit of the privilege as to the details of her testimony. *In re Candor Diamond Corp.*, 21 B.R. 147, 151 (S.D.N.Y.1982). However, this Court did not find that waiver of the Fifth Amendment privilege had taken place, because a default judgment had been granted June 11, 1982 so that even if the affidavit and testimony presented a distorted view of the facts, there could be no prejudice to Maguire, since this Court

had not relied on either the Margolies affidavit or testimony. Therefore, even if the affidavit and testimony otherwise constituted sufficient predicate for waiver, this Court held they could not, in view of the entry of the default judgment. *Id.* at 152.

Subsequently, Mrs. Margolies appealed from the entry of the default judgment and from the denial of her motion to vacate the default. On July 28, 1983, the default judgment was vacated by District Judge Leval, and the case was remanded to this court for further proceedings on the merits. Judge Leval's opinion stated, *inter alia*, that Mrs. Margolies presented adequate support for the existence of a meritorious defense on the merits.

In view of Judge Leval's order, discovery was re-commenced by the trustee, who, on October 14, 1983, took a deposition of Mrs. Margolies. Mrs. Margolies again refused to answer all questions put to her on grounds of Fifth Amendment privilege, as well as, with respect to certain questions, the marital privilege, parent-child privilege, and attorney-client privilege. The majority of questions asked concerned the factual support for the statements contained in Mrs. Margolies' affidavit and assertions made in her testimony at the hearing. (Both affidavit and testimony will hereafter be referred to as "prior testimony".)

By notice of motion dated December 6, 1983, the trustee now seeks an order pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, as incorporated by Rule 737 of the Rules of Bankruptcy Procedure, compelling answers to deposition questions put forward by the trustee on October 14, 1983.

The issue presented in this case is therefore identical to that presented to this court in its prior decision in *In re Candor Diamond Corp., supra,* that is, whether Mrs. Margolies, by giving the prior testimony in opposition to a motion for a preliminary injunction, has waived her Fifth Amendment privilege so as to compel her to supply details about the prior testimony in the context of a Bankruptcy Rule 205 examination.

The passage of two years does not change the relevant analysis:

■ A witness who voluntarily testifies on her own behalf waives the right to invoke the Fifth Amendment privilege as to matters raised by her own testimony. In choosing to testify, a witness must weigh the advantage of raising the privilege against the advantage of putting forward his version of the facts. *Brown v. United States,* 356 U.S. 148, 155–56, 78 S.Ct. 622, 627–28, 2 L.Ed.2d 589 (1956).

■ Once a witness has freely testified to incriminating facts, he cannot refuse to testify as to the details, because "[d]isclosure of a fact waives the privilege as to details." *Rogers v. United States,* 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344, *reh. denied,* 341 U.S. 912, 71 S.Ct. 619, 95 L.Ed. 1348 (1951).

■ The test for waiver of Fifth Amendment privilege has been set forth in the Second Circuit case of *Klein v. Harris,* 667 F.2d 274 (2d Cir.1981). Waiver of the privilege against self-incrimination may be inferred if:

"(1) the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination." *Id.* at 287.

The second prong of the *Klein v. Harris* test, that the witness had "reason to know" he was waiving the privilege, is satisfied if the witness's prior statements were (a) "testimonial", that is, voluntarily made under oath in the context of the same judicial proceeding, and (b) "incriminating", meaning directly inculpating the witness on the charges at issue, rather than dealing with collateral matters. *Id.* at 288.

The two elements of the second prong of *Klein v. Harris* are both met. Mrs. Margolies' affidavit and testimony are "testimonial" and "incriminating", as defined by *Klein. In re Candor Diamond Corp.* at 152.

The only reason why waiver of the privilege was not found in the prior decision of this Court was because the entry of a default judgment in the case had vitiated any "significant likelihood that the court would be forced to rely upon a distorted view of the truth". But with the vacating of the default judgment and the reopening of the case, there is *now* significant likelihood of distortion if the court is left with the witness's unchallenged and unsupported version of the facts, facts which go to the key issue of the case, namely, the source of the funds used by Mrs. Margolies in her attempt to pay off the mortgage on her home. The opening of the default judgment by District Judge Leval necessitates a finding that the first prong of the *Klein* test has been met. Therefore, Mrs. Margolies' privilege against self-incrimination has been waived by her prior testimony and is now unavailable.

Defendant's contention that there is no waiver because the Rule 205 examination at which testimony is sought to be compelled is not the "same judicial proceeding" as the preliminary injunction hearing in which the prior testimony was given, is without merit. The preliminary injunction hearing was held for the purpose of discovering the source of funds for the $180,000 check. The questions posed at the Rule 205 examination of October 14, 1983 were asked to elicit the same information; for the same purposes, and as part of the same adversary proceeding as the preliminary injunction hearing. The Rule 205 examination and the preliminary injunction hearing are merely different stages of the same judicial proceeding.

The cases cited by defendant are distinguishable. *Ionian Shipping Co. v. British Law Insurance Co.,* 314 F.Supp. 1121 (S.D. N.Y.1970), involved two separate actions in separate courts, between different parties. The witness sought to be questioned was a witness in one action and a plaintiff in the other, so that the questioning was for different purposes in the two proceedings. In *United States v. Miranti,* 253 F.2d 135 (2d Cir.1958), the witnesses testified before a grand jury investigating a conspiracy and

were subsequently convicted of conspiracy. The court held that when the grand jury reconvened, in separate proceedings, the witnesses could invoke their privilege against self-incrimination because they were then placed in jeopardy for the first time for substantive crimes. The court explicitly stated that for all practical purposes, two separate grand juries were investigating unrelated crimes. *Id.* at 140.

The passage of two years between the November 4, 1981 hearing and the October 14, 1983 Rule 205 exam does not create two separate proceedings, where the delay was due solely to appeal of the default judgment. *See United States v. Miranti*, 253 F.2d 135, 140 (2d Cir.1958), *discussing United States v. St. Pierre*, 132 F.2d 837 (2d Cir.1942).

Although the passage of two years between the two stages of the proceeding may have resulted in changed conditions "creating new grounds for apprehension", *id.* at 140, that is not the test for testimonial waiver. The three tests have been stated above and are spelled out in *Klein v. Harris:* likelihood of distortion, and statements that are both testimonial and incriminating. The "grounds for apprehension" are judged by the witness at the time he decides to waive his privilege when making the initial statement, not at the time further details are sought. 667 F.2d at 287–88.

■ Since the three elements necessary for testimonial waiver have been met, this court finds that Mrs. Margolies has waived her Fifth Amendment privilege as to the subject matter in her affidavit of November 3, 1981 and testimony of November 4, 1981, and may be questioned as to these matters in a subsequent Rule 205 examination.

The defendant has further sought to invoke the parent-child privilege, marital privilege, and attorney-client privilege.

The concept of parent-child privilege is a departure from the traditional rule that, except for the marital privilege, there is no privilege that allows a witness not to testify against family members. *See United States v. Jones*, 683 F.2d 817, 819 (4th Cir.1982); *In re Grand Jury Proceedings*, 647 F.2d 511, 512–13 & n. 4 (5th Cir.1981); *United States v. Penn*, 647 F.2d 876, 885 (9th Cir.1980) (*en banc*). The Second Circuit has not seen fit to recognize such a privilege. *In re Matthews*, 714 F.2d 223, 224 (2d Cir.1983).

In addition to the Fifth Amendment privilege, Mrs. Margolies asserted the marital privilege at the October 14, 1983 Rule 205 examination in response to numerous questions concerning the factual basis for assertions she made in her prior testimony.

■ The privilege for confidential marital communications belongs to the communicating spouse, not to the communicatee spouse. 8 *Wigmore on Evidence* § 2340 (McNaughton rev. 1961); McCormick, Handbook of the Law of Evidence § 83 (2d. ed. 1972); *United States v. Figueroa-Paz*, 468 F.2d 1055, 1058 (9th Cir.1972). It is the spouse's communication that is privileged, not his conduct. *United States v. Long*, 468 F.2d 755, 757 n. 3 (8th Cir.1972). Further, testimony of a wife as to circumstances, occurrences, and events that took place during the marriage is not a privileged marital communication. *Barsky v. United States*, 339 F.2d 180, 182 (9th Cir.1964). Therefore, to the extent that the questions sought to be asked of Mrs. Margolies concern information communicated to her, or concern the conduct of her spouse, or involve events which took place during the marriage, the communications are not privileged.

■ The marital privilege is waived when the allegedly confidential communication is disclosed by the spouse claiming the privilege. *United States v. Lilley*, 581 F.2d 182, 189 (8th Cir.1978). Where one spouse discloses a marital communication to a third person the confidence is broken and the privilege destroyed. *United States v. Pensinger*, 549 F.2d 1150, 1151, 1152 (8th Cir.1977). Therefore, marital privilege cannot be claimed as to any statements made by Mrs. Margolies' husband before a third party in her presence.

Mrs. Margolies seeks to assert the attorney-client privilege in response to questions asking (1) whether she executed an affidavit before a particular notary public, and (2) the name of her attorney. The attorney-client privilege applies only when information is the product of an attorney-client relationship and is maintained as confidential between attorney and client. *Brinton v. Dep't of State*, 636 F.2d 600, 603 (D.C.Cir.1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981). The privilege primarily applies to facts divulged by client to attorney. *Id.* at 605. Clearly, the attorney-client privilege is unavailable in the context in which the defendant attempts to employ it.

As Chief Justice Burger wrote in *Trammel v. United States*, 445 U.S. 40, 50–51, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980):

Testimonial exclusionary rules and privileges contravene the fundamental principle that " 'the public ... has a right to every man's evidence.' " *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950). As such, they must be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Elkins v. United States*, 364 U.S. 206, 234, 80 S.Ct. 1437, 1454, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., *dissenting*). *Accord, United States v. Nixon*, 418 U.S. 683, 709–710, 94 S.Ct. 3090, 3108–3109, 41 L.Ed.2d 1039 (1974).

Plaintiff's motion to compel testimony by defendant Madeleine Margolies is hereby granted, within the parameters set forth in this decision.

It is so ordered.