UNITED STATES of America, Plaintiff,

v.

J. Gary SHEETS, Defendant.

No. 88–CR–0183–S.

United States District Court,
D. Utah, C.D.

Feb. 20, 1989.

Stewart C. Walz, Tena Campbell, Asst. U.S. Attys., Salt Lake City, Utah, for plaintiff.

Peter Stirba, David L. Bird, McKay, Burton & Thurman, Salt Lake City, Utah, for defendant.

## ORDER ON MOTION IN LIMINE

RONALD N. BOYCE, United States Magistrate.

The United States has filed a motion to be allowed to introduce certain portions of the diary of Kathleen Sheets, now deceased who was the former wife of the defendant J. Gary Sheets. The United States seeks to have this court hold that the diary is admissible under Rule 804(b)(5), F.R.E. The matter has been referred to the magistrate under 28 U.S.C. § 636 by reference from the District Court. The matter is a non-dispositive, pretrial matter. See *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458 (10th Cir.1988).

The defendant, J. Gary Sheets, has filed a response to the motion of the United States and opposes the introduction of the diary. The defendant contends the diary is not admissible under 804(b)(5), F.R.E., and is protected as a privileged marital communication. Defendant has also suggested that admission of the diary may violate the Constitutional right of confrontation of the defendant.

The diary was written by Kathleen Sheets, starting at about February 2, 1985, until her untimely murder in October 1985. Mrs. Sheets was murdered in October 1985 by a bomb explosion set by Mark Hoffman who is now serving a sentence in the Utah State Prison for Mrs. Sheets murder. Mrs. Sheets' death has nothing to do with this case, except for how it may affect the defendant's claim of a privileged marital communication. The defendant, J. Gary Sheets, has remarried since the death of Kathleen Sheets.

The United States has charged J. Gary Sheets with securities violations, embezzlement of pension funds, interstate transportation of stolen money, and wire fraud. It is the prosecution's position that declarations made by Kathleen Sheets, in her diary, allow the inference that J. Gary Sheets knew the precarious status of his financial empire and that it would show that he made representations and conducted business activities as through his business entities were sound when he knew the situation to be to the contrary. This evidence would be relevant to some of the charges.

The diary was prepared by Kathleen Sheets in her own handwriting and appears to have been prepared each day and reflects the events of her day and various family and personal concerns. The United States and the defendant have assumed the diary is hearsay.[1] Further, the parties have assumed that the only basis on which the evidence can be admitted is the so called "catch-all" hearsay exception under

---

1. This may not be the case. The statements in the diary are not offered for the truth of the matter asserted but for the inference they project as to the defendant's knowledge of his financial difficulties. A declaration is only hearsay if it meets the definition of Rule 801(c). The declarant in this case is Mrs. Sheets. Hearsay requires the statement of the declarant be offered "to prove the truth of the matter asserted." Rule 801(c), F.R.E. Here, the statements do not seem to be offered for the truth of any assertion but for the inference drawn as to the defendant's knowledge. This would make the declarations non-hearsay, allow their admissibility based on relevance, and remove any claim of lack of confrontation. See Wigmore, *Evidence* § 1766 (3rd Ed.1940). In this case it can be legitimately argued the purpose for which the United States offers the evidence is not an "assertion." See *United States v. Hensel* 699 F.2d 18 (1st Cir.) cert. denied 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983); *United States v. Anello*, 765 F.2d 253, 261 (1st Cir.1985); *United States v. Monaco*, 700 F.2d 577, 582 (10th Cir.1983); *United States v. Giraldo*, 822 F.2d 205, 212–213 (2d Cir.1987); *United States v. Zenni*, 492 F.Supp. 464 (D.C.E.D.Kty.1980); *Hearsay Handbook* § 2.03 (1983).

Rule 803(24) or 804(b)(5), F.R.E.[2] Since the parties have made these assumptions the Court will only consider the issue in the context presented.

Both parties also assume Kathleen Sheets' diary is within any privilege of marital communication, between herself and J. Gary Sheets, that might exist under federal law. This may be arguable. The privilege only applies to a confidential communication between spouses. 2 Wigmore, *Evidence* § 488 (Chadbourn Rev.1979). In this case the diary is not a communication between spouses but one spouse's recording of thoughts based on the communication. However, as defendant points out there is authority for still recognizing the privilege in order to keep one spouse from breaching the other spouse's right to confidentiality. 8 Wigmore, *Evidence* § 2339 (Mc.N.Rev.).

The United States contends any confidential marital communication privilege has been waived. Both parties assume such a spouse privilege exists under federal law. Rule 501, F.R.E. does not expressly recognize any such privilege and the Supreme Court's promulgation of the Rules of Evidence in 1973 did not recognize such a privilege. See Advisory Committee's Note to Proposed Supreme Court Rule 505. However, substantial federal case law supports recognition of the existence of the privilege. *Wolfle v. United States*, 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617 (1934); *Blau v. United States*, 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306 (1951); *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954). Several Circuits have continued to assume the validity of the marital confidential communications privilege following the adoption of Rule 501, F.R.E. *United States v. Smith*, 533 F.2d 1077 (8th Cir.1976); *United States v. Lustig*, 555 F.2d 737 (9th Cir.1977); *United States v. Thompson*, 716 F.2d 248 (4th Cir.1983); *United States v. Archer*, 733 F.2d 354 (5th Cir.1984); *United States v. Neal*, 743 F.2d 1441 (10th Cir.1984); *In re*

*Grand Jury Investigation*, 754 F.2d 863 (9th Cir.1985).

The privilege appears to be available even after the termination of the marriage in about fifty percent of the jurisdictions in the United States. McCormick, *Evidence* 3rd Ed., Cleary § 85 (1984). There is federal precedent supporting the argument that the privilege exists after death or divorce. *In re Grand Jury Investigation*, supra; *In re Witness Before Grand Jury*, 791 F.2d 234 (2d Cir.1986); *United States v. Byrd*, 750 F.2d 585 (7th Cir.1984); *United States v. Pensinger*, 549 F.2d 1150 (8th Cir.1977). This position may be extreme and unjustified by any need to protect the marital relationship. See *Shenton v. Tyler*, L.R. [1939] Ch.Div. 620, 652 (Luxmore L.J.). The perpetuation of the privilege after death in order to assure the marital relationship, *Wolfle v. United States*, supra, seems exaggerated. To apply the privilege in the context of this case is to elevate form over substance and create a rule that accomplishes nothing except the frustration of truth. The privilege should not apply in a case like the instant one. However, it is assumed the privilege is applicable to this case. The question is then whether the privilege has been waived?

At the time of hearing on this issue the prosecution called Detective James F. Bell, Salt Lake City Police Department. He testified that four to six weeks after the bombing that killed Kathleen Sheets the police, having heard Kathleen kept a diary, asked J. Gary Sheets for the diary to determine if there was anything in it that might bear on who killed Kathleen. The defendant J. Gary Sheets turned the diary over to the police. He told them at that time that he didn't think there was anything in it that would help the police. Thus defendant was aware of the contents of the diary and knew the substance of the material he was releasing. Detective Bell testified there were no conditions put on the diary's use, that Sheets knew the diary was going

2. The United States has not advanced a plausible theory that if the evidence is hearsay it would be admissible under Rule 805, F.R.E. as hearsay included within hearsay. Any statement made by J. Gary Sheets would be non-hearsay as an admission under Rule 801(d)(2)(A). The record made by Kathleen Sheets in her diary may be admissible as an exception to the hearsay rule under 803(1), F.R.E. as a present sense impression.

to be photocopied and disseminated to numerous other officers and investigators. The motion of the United States shows that some parts have now been printed in a book dealing with the bombings in Salt Lake City in October 1985 and the Mark Hoffman prosecution. Copies of the diary were also to be given to the County Attorney's Office. Sheets invoked no request for privacy and none was promised. There was no attachment of any claim of privacy to the act of turning over the diary.

■ Under the circumstances the court finds the defendant voluntarily, knowingly and intelligently turned over his wife's diary to others knowing of its contents and without any condition.[3]

A privilege as to confidential marital communications may be waived as any other privilege.[4] "The spouse possessing the privilege may of course waive it." Wigmore, *Evidence* § 2340 (Mc.N.Rev.1961). The waiver may be found in extrajudicial disclosure. Id. *Fraser v. United States,* 145 F.2d 139 (6th Cir.1944); *State v. Cox,* 106 Utah 253, 147 P.2d 858 (1944). Rule 501, F.R.E. directs federal courts to apply a standard of the "common law." ... "in light of reason and experience." Rule 511, F.R.E. as proposed by the Supreme Court, but not adopted by Congress, provides:

A person upon whom these rules confer a privilege against disclosure of the confidential matter or communication waives the privilege if he or his predeces-

sor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication. This rule does not apply if the disclosure is itself a privileged communication.

■ In this case the defendant waived his own privilege and as the surviving successor to the communication waived that of Kathleen Sheets.[5] The communication to the Salt Lake City and other police was a waiver of any privilege by J. Gary Sheets. See *People v. Worthington,* 38 Cal.App.3d 359, 113 Cal.Rptr. 322 (1974) (husband's statement to police was a voluntary waiver of a communication made to his wife); [6] *Grulkey v. United States,* 394 F.2d 244, 246 (8th Cir.1968) (defendant knew communication would not be confidential).

It is well settled that no communication is privileged which is disclosed to third persons. In *Wolfle v. United States,* supra, the court held a confidential communication between husband and wife was destroyed by the presence of a stenographer who could testify as to the communication. The Court noted the limited purpose of the marital privilege. Although this was a case where a third person was present during the communication, it makes no difference whether made in the presence of a third person or after when the claimant has voluntarily waived the privilege.[7] In *Unit-*

---

3. Defendant claims an "expectancy of privacy" based on the Utah Subpoena Powers Act § 77–22–1, etc., Utah Code Ann. The Act has no application. The diary was not disclosed under subpoena, the Act was not involved. The Act does not stand for a general expectation of privacy in providing evidence to the police.

Defendant seeks to rely on § 77–24–1, Utah Code Ann., which requires a peace officer to safely keep property coming into his possession. That statute creates no privilege for defendant from the use of such evidence and federal not state law determines admissibility in this case. See Rule 501, F.R.E. Further, the statute creates no special privacy right in the property. The property is to be returned to the "owner" of the property. The owner of the diary of Kathleen Sheets was her estate, not her husband, until proper distribution of her estate occurred.

4. One feature of this case that is troubling is that it is not known whether the initial commu-

nications between Kathleen Sheets and defendant were themselves made in confidence. It will be assumed they were. However defendant as claimant of the privilege must support the basis of the privilege. Defendant has not actually presented any evidence on the issue, merely legal argument.

5. This is not to suggest defendant could claim Mrs. Sheets' privilege in *his* behalf. He has no such standing.

6. Defendant urges 8 Wigmore, *Evidence* § 3339, supra, to support his claim. That section has no bearing on this issue since this is not a case where Kathleen Sheets turned over the communication to the police, but where the defendant, J. Gary Sheets, did so.

7. See also *Pereira v. United States,* supra.

*ed States v. Lilley,* 581 F.2d 182, 189 (8th Cir.1978) the Court said:

> The confidential communications privilege is waived, *by definition,* when the allegedly confidential communication is disclosed by the spouse claiming the privilege because the communications are no longer privileged. (Emphasis added).

A waiver of the psycho-therapist patient privilege, if any exists, was found in *United States v. Crews,* 781 F.2d 826 (10th Cir.1986) where the defendant discussed his comment made to a therapist with a Secret Service Agent.

See also *In re Candor Dimond Corp.,* 42 B.R. 916 (Bkty.N.Y.1984) (recognizing where one spouse discloses a communication it constitutes a waiver as to that disclosing spouse).

Therefore, the defendant's claim of marital communication must be rejected.

■ The question remains whether the catch-all hearsay rules (803(24) and 804(b)(5), F.R.E.) will accommodate relevant portions of Kathleen Sheets' diary.[8] Rules 803(24) and 804(b)(5) establish certain criteria[9] that must be met if hearsay evidence is to be admitted which is not otherwise subject to the rule of exclusion. First, the hearsay statement must be offered as a material fact. Second, the statement must be more probative than any other evidence on the point for which it is offered than other evidence which the proponent can procure through reasonable efforts. Third, the admission of the evidence must serve the general purposes of the rules and the interests of justice. Finally, there is one very critical requirement, that the evidence have a circumstantial guarantee of trustworthiness equivalent to other hearsay exceptions. Much of the parties' arguments have been directed to these considerations.

*Materiality*

The evidence is material. It is highly probative of what defendant must have known about the financial conditions of his business. It inferentially casts direct light on the defendant's knowledge and on the *mens rea* required to prove the defendant's criminal culpability as to some of the charges.

*Probative Value*

The evidence has significant probative value. The defendant suggests that all the other government evidence ought to be probative of the defendant's knowledge, but then, with some degree of inconsistency, argues the prosecution does not have any direct evidence of defendant's knowledge and therefore must resort to the diary. The United States asserts it does not have evidence *as probative* on defendant's knowledge as the material it now seeks to have this court admit. Under the circumstances presented,[10] the conclusion must be made that the evidence of the diary entries meets the probative value standard of Rule 803(24) and 804(b)(5).

*Purpose of the Rules and Interest of Justice*

The Federal Rules of Evidence are designed to support the fair administration of justice "to the end that the truth may be ascertained and proceedings justly determined." Rule 102, F.R.E. The rules favor admissibility where truth will be promoted. The residual hearsay rules are designed to make hearsay evidence available for use which has comparable worth to hearsay evidence received under more traditional exceptions, yet which for one reason or another falls outside recognized hearsay exceptions, again the inquiry must be whether the material sought to be admitted in evidence is reliable and will promote the

---

**8.** The magistrate has not been asked to rule on the admissibility of specific portions of the diary. However, the diary has been examined and it has been determined that there are portions of the diary that support the claim of the Government. However, specific objections on relevancy are not before the magistrate but may be raised before the district court at trial.

**9.** The requirement of pretrial notice has been satisfied.

**10.** Considering the issue under Rule 104(a), F.R.E.

truth.[11] In this case there is nothing inconsistent with the interests of justice in the admission of the evidence. The defendant, the government asserts, will deny knowledge of the alleged precarious condition of his business enterprises. Defendant does not address this issue in his memorandum. The diary may be some evidence of defendant's state of knowledge. It is not offered for Kathleen Sheets' knowledge of the business of her husband,[12] but as an inference of her husband's knowledge and beliefs. Under such circumstances the requirement that the rules of evidence and interest of justice be served by admission is supported by the circumstances.

*Equivalent Circumstantial Guarantee of Trustworthiness*

The magistrate has read the diary and finds the relevant entries reflect Kathleen Sheets' concerns and beliefs, derived from her husband, as to the precarious status of J. Gary Sheets' business. The diary writings do not appear frivolous, made in jest or scorn, or in any way unreliable as to what Mrs. Sheets must have been told by her husband. The recordation appears to have been in close proximity to the conversations. The entries are in Kathleen Sheets' handwriting. There was, therefore, little time for distortion. See *Robinson v. Shapiro*, 646 F.2d 734 (2d Cir.1981); *United States v. Iaconetti*, 406 F.Supp. 554 (D.C.E.D.N.Y.1976) aff'd 540 F.2d 574 (2d Cir.) (same day). There was no reason for Kathleen Sheets to lie to herself or to make false, negative statements in her diary. *United States v. Barlow*, 693 F.2d 954 (6th Cir.1982); *United States v. McPartlin*, 595 F.2d 1321 (7th Cir.1979) (diary and calendar entries regularly made). The declaration is not self-serving and was based on what her husband, who had knowledge of his own state of mind, disclosed. There is nothing to suggest Mrs. Sheets was other than a reliable person. The circumstances of the declarations are corroborated by what

eventually occurred to the defendant's business, although the declarations themselves are not otherwise corroborated. This does not argue against admission. See *United States v. Bailey*, 581 F.2d 341, 349 (3d Cir.1978).

Applying the above criteria it must be concluded the diary entries are reliable and trustworthy and meet objective standards that support admission. See Black, *Federal Rules of Evidence 803(24) and 804(b)(5)—The Residual Exception—An Overview*, 25 Houston L.Rev. 13 (1988); McCormick, *Evidence*, supra § 324.1 (1984).

Also, the evidence in this case is akin to other recognized exceptions to the hearsay rule expressly provided for in the F.R.E. Rule 803(1) (present sense impression), Rule 803(3) (then existing mental state of mind), 803(5) (past recollection recorded), 803(6) (regularly conducted activity), 803(13) (statements of fact concerning personal or family history), 803(19) (reputation concerning family history), 803(21) (reputation as to character among associates) and 804(b)(4) (a statement of family history). The standard of reliability of the diary evidence in this case is equivalent to the reliability of the evidence offered under the enumerated exception.

Other federal courts have found statements equivalent to those of Kathleen Sheets to be admissible. *United States v. Rouco*, 765 F.2d 983 (11th Cir.1985) (statement of deceased D.E.A. Agent to superior officer); *United States v. Woolbright*, 831 F.2d 1390 (8th Cir.1987) (girlfriend's statement concerning criminal activities of a boyfriend); *United States v. Lyon*, 567 F.2d 771 (8th Cir.1977) (transcribed interview); *United States v. Van Lufkins*, 676 F.2d 1189 (8th Cir.1982) (assault victim's sister's statement to F.B.I.).

Of significant importance in this issue is *United States v. Wright*, 826 F.2d 938 (10th Cir.1987) where the Tenth Circuit up-

---

11. See *Dallas County v. Commercial Union Assurance Co., Ltd.*, 286 F.2d 388, 397–398 (5th Cir.1961) where prior to the adoption of the Federal Rules of Evidence the Fifth Circuit admitted a newspaper article applying similar criteria of Rule 803(24) and 804(b)(5).

12. The magistrate recommends a cautionary instruction be given pursuant to Rule 105, F.R.E., as to the use the jury may make of the evidence.

held the admissibility of a diary of a codefendant who was unavailable due to invocation of the privilege against self-incrimination:

> The government was allowed to use inculpatory portions of Cardall's diary under the "residual" hearsay exception, Fed.R.Evid. 804(b)(5). The defendants argue that this was improper because there was no "circumstantial guarantees of trustworthiness" as required by the rule. For all we know, they say, the diary could have been fiction. The government counters that the diary was self-incriminating, corroborated by other evidence and relied on daily by Cardall. The defendants also complain that the court, after admitting the government's portions, excluded other portions that they wanted to present.

Defendant Morgan challenges the court's admission of portions of the diary on the grounds that two of the four criteria in the rule were not met. Specifically, Morgan alleges that the diary was not more probative on the point for which it was offered than any other evidence, and the diary did not have sufficient guarantees of trustworthiness.

The determination for the admission and exclusion of evidence is let to the trial court's discretion. The trial court's decision will be overturned only if there is a clear abuse of discretion. *United States v. Hill,* 627 F.2d 1052, 1055 (10th Cir.1980).

The entries from Cardall's diary are more probative on the point of Cardall's admissions of meetings and discussions about the FSI program and his part in the FSI program than any other evidence. All parties agreed that no evidence was available from Cardall due to his invocation of his rights under the Fifth Amendment. The trial judge had a reasonable basis for concluding that the evidence was more probative on the point for which it was offered than other evidence which could be obtained.

The entries in the diary admitted upon motion of the government were also sufficiently reliable. In *United States v. McPartlin,* 595 F.2d 1321 (7th Cir.1979),

cert. denied 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979), the Seventh Circuit indicated that a desk diary containing regular and frequent entries documenting relationships between the author and other officials made for the purpose of allowing the author to rely on the entries was sufficiently reliable to be admitted under the residual exception to the hearsay rule. The court indicated that reliability was demonstrated by the highly self-incriminatory nature of the entries, the regularity with which they were made, and the authors' need to rely on the entries. In this case, the trial court was satisfied that the diary was kept with sufficient regularity. There was no apparent reason for falsification of the entries. Additionally, the diary was self-incriminatory and the entries introduced were corroborated by other testimony.

The ruling in *Wright* supports the admissibility in this case. See also *Davis v. Allsbrooks,* 778 F.2d 168, 177 (4th Cir.1985) (wife's diary in homicide case admitted where the diary was in her handwriting).

Therefore, it is concluded that the government's motion under Rule 803(24) or 804(b)(5), F.R.E. for admission of Kathleen Sheets' diary should be granted.

*Confrontation*

The admission under the Rules of Evidence does not end the inquiry. The question must be resolved as to whether the admission of such evidence would violate Sheets' right of confrontation under the Sixth Amendment, United States Constitution. Sheets does not have the opportunity to cross-examine the deceased declarant or to confront her face to face. However, the United States Supreme Court has held hearsay evidence can properly be admitted without violating the Sixth Amendment right to confrontation if there is adequate "indicia of reliability" for the declaration. *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In *Roberts* the Court observed:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally re-

quires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability" Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

See also *United States v. Inadi,* 475 U.S. 387, 390–391, 106 S.Ct. 1121, 1124, 89 L.Ed. 2d 390 (1986) (hearsay statements of a co-conspirator); *Kentucky v. Stincer,* 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987).

■ In this case, in order for the evidence to meet the criteria for admission under Rule 803(24) and 804(b)(5), F.R.E., the same criteria of trustworthiness must be demonstrated as is required by the Sixth Amendment. It has been previously found that the diary entries are reliable and trustworthy. The justification for admissibility shown above establish reliability. The same reasons as establish trustworthiness for admission as residual hearsay meet the criteria of the Confrontation Clause. Other Courts in similar circumstances have found that evidence admissible under the residual hearsay exception does not violate the right to confrontation. *Davis v. Allsbrooks,* supra; *United States v. Barlow,* supra; *United States v. Howard,* 774 F.2d 838 (7th Cir.1985); *United States v. Guinan,* 836 F.2d 350 (7th Cir.1988); *United States v. Marchini,* 797 F.2d 759 (9th Cir. 1986); *United States v. Thevis,* 665 F.2d 616 (5th Cir.1982).

Careful analysis by scholars have also concluded the present status of the law would support an interpretation of the Confrontation Clause that would support admission of Kathleen Sheets' diary in this case. Ross, *Confrontation and Residual Hearsay: A Critical Examination and Proposal for Military Courts,* 118 Military L.Rev. 31 (1987); Baker, *The Hearsay Rule and Due Process–A Proposal for Determining When Hearsay May Be Used in Criminal Trials* 6 Conn.L.Rev. 529 (1974); Park, *A Subjective Matter Approach to*

*Hearsay Reform,* 86 Mich.L.Rev. 51, 92–93 (1987). Therefore, it is concluded that the Confrontation Clause provides no basis for exclusion of the diary as evidence for the prosecution. Therefore,

IT IS HEREBY ORDERED that the relevant portions of the diary of Kathleen Sheets may be used in evidence by the prosecution.