UNITED STATES of America, Plaintiff,

v.

David M. BRONK, William P. Bronk, Robert J. Horvath, Michael A. Stremkowski and Paul J. Wojtalewicz, Defendants.

No. 84–CR–54–S.

United States District Court, W.D. Wisconsin.

March 18, 1985.

James M. Shellow, Stephen M. Glynn, Milwaukee, Wis., David L. Mandell, Madison, Wis., Gene D. Linehan, Wausau, Wis., Sarah Furey Crandall, Madison, Wis., for defendants.

U.S. Atty. John R. Byrnes, Madison, Wis., for plaintiff.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

On October 30, 1984, the prosecution of certain offenses was undertaken by the United States of America against the five defendants, David M. Bronk, William P. Bronk, Robert J. Horvath, Michael A. Stremkowski, and Paul J. Wojtalewicz, by the docketing in this Court of an indictment returned by the Grand Jury.

The defendants are alleged to have conspired to intimidate and interfere with the federally-protected activities of Olufunsho Adeshina, Nathaniel Aiyedatiwa and Anthony Isua because of race, color or national origin, which resulted in bodily injury to these three persons.

Specifically, the Indictment sets forth in Count 1 the overt acts of a conspiracy in violation of Title 18 U.S.C. § 371, and in Counts 2, 3 and 4 alleges a violation of Title 18 U.S.C. §§ 2 and 245(b)(2)(F) against each of the three named persons, Adeshina, Aiyedatiwa, and Isua.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), the Hon. James Groh, United States Magistrate for the Western District of Wisconsin, has held hearings and issued several written reports and recommendations concerning defendants' motions to dismiss this action. Several of the defendants have objected to certain of those recommendations. The Court will rule on those objections at this time. However, to the extent that no party objected to a particular recommendation of Magistrate Groh, that recommendation is adopted by the Court and the supporting report incorporated herein by reference without further comment.

Several of the defendants have also appealed certain of the Magistrate's orders on pre-trial motions. The Court will rule on those appeals at the outset.

## APPEALS FROM PRE-TRIAL ORDERS

The defendants Bronk and defendant Wojtalewicz appeal from both the Magistrate's discovery order of February 25, 1985 and from his order of Februrary 27, 1985 denying their motions for severance. The Court may reconsider a decision of the Magistrate with regard to routine pre-trial matters if it is clearly erroneous and contrary to law. 28 U.S.C. § 636(b)(1)(A).

*Discovery Orders*

1. Production of Special Agent's Investigative Report.

The Court has considered the defendants' motions and the Magistrate's order with regard to this issue and concludes, pursuant to the Jencks Act, 18 U.S.C. § 3500(a) that it would be premature for the Court to order production of the materials sought at this time.

2. Production of Witness Statements, Co-conspirator Statements, and Notes from Interviews Conducted by Government Counsel.

The only issue of substance with regard to production of such materials decided in

Magistrate Groh's order of February 25, 1985 was whether a defendant was entitled to receive statements made to the government by his or her co-conspirator(s) who would not be called by the government to testify at the defendant's trial. The Magistrate ruled that the moving defendants here were not entitled to such statements because they fell outside the scope of Rule 16, Federal Rules of Criminal Procedure and the Jencks Act (of course, the government had already been ordered to turn over any exculpatory *Brady* material). The essence of defendants' argument on appeal to the Court is that the Magistrate's order was contrary to controlling precedent and an abuse of his discretion. In support of that argument, they cite *United States v. Fine*, 413 F.Supp. 740, 743 (W.D.Wis.1976) (Gordon, J. sitting by designation), a case in which the court held that statements by the defendant's alleged co-conspirators were discoverable by the defendant pursuant to Rule 16(a)(1)(A) because those statements were not hearsay and thus could be admitted into evidence against the defendant with the same impact as his own prior statements.

■■■ The court's reasoning in *Fine* is not persuasive. If the only test for discoverability under Rule 16 is whether the material sought could potentially be used to impeach the defendant if he testified at trial, then the wide range of third-party statements in the government's possession would also be discoverable; as the court of appeals held in *United States v. Zarattini*, 552 F.2d 753 (7th Cir.1977), *cert. den.* 431 U.S. 942, 97 S.Ct. 2661, 53 L.Ed.2d 262 (1977), such third-party statements *are not* discoverable pursuant to that rule, even though they may incorporate the defendant's own statements. *Id.* at 757. Although in *Zarattini* the court does quote language from *United States v. McMillen*, 489 F.2d 229 (7th Cir.1972) *cert. den.* 410 U.S. 955, 93 S.Ct. 1420, 35 L.Ed.2d 687 (1973), indicating that a trial court may, in its discretion, require the government to produce statements made by co-defendants who are not expected to testify as government witnesses at trial, in the context of

the *Zarattini* case that statement was gratuitous, while in *McMillen* itself it was sheer dicta because the only issue before the court was whether production of statements of a co-conspirator who was going to testify on the government's behalf was proper. Moreover, both *McMillen* and *United States v. Feinberg*, 502 F.2d 1180 (7th Cir.1974) (standing for a similar proposition regarding the trial court's discretion to require production of statements of which the government was aware made by the defendant to third parties) arose prior to the 1974 amendment to Rule 16 that limited the Court's role in discovery and stated in greater detail the government's discovery obligations. In light of the court of appeals' recent statement in *United States v. Navarro*, 737 F.2d 625, 630 (7th Cir.1984) that there is "[no] right of access to the prosecutor's files in order to search for impeachment material," the Court believes the Magistrate followed the better practice of construing Rule 16 strictly and denying production of materials not clearly within its scope.

Regarding the production of the notes of interviews conducted by government counsel, the Magistrate's decision was also correct.

### 3. FOIA Request

■■■ The only real issue presented in this case with respect to whether the defendants can utilize the Freedom of Information Act, 5 U.S.C. § 552, as a discovery tool is whether they have satisfied the procedural requirements for bringing an FOIA issue before the Court. The Magistrate has found that they have not, and the defendants have failed to bring anything to the Court's attention that would undercut his findings. Accordingly, the Magistrate's order denying their request for FOIA relief is affirmed.

### *Motions for Severance*

Defendants' motion for severance was based on two grounds: that their defenses are antagonistic and that, as held in *Bru-*

*ton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), an admission in a joint trial of a non-testifying defendant's statement incriminating himself and his co-defendants would violate the co-defendant's right to confront witnesses guaranteed by the Sixth Amendment.

■■■■ Defendants Bronk indicate that they will testify that their co-defendants, rather than they themselves, committed the assaults that underly the four offenses in the indictment with which all five defendants are charged. Presumably, defendant Wojtalewicz joins in the Bronks' motion, because he intends to testify, as he has on prior occasions, that it was the Bronk brothers and the other defendants who assaulted the victims of the indicted offenses. Clearly, these defenses are antagonistic; but in this circuit severance is required pursuant to Rule 14, Federal Rules of Criminal Procedure, only where "the conflict between the defenses is so prejudicial that differences are unreconcilable and that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty," *United States v. Madison*, 689 F.2d 1300, 1306 (7th Cir.1982) (citations and attributions omitted), or where "acceptance of one party's defense will preclude the acquittal of the other." *United States v. Hendrix*, 752 F.2d 1226, 1232 (7th Cir.1985) (citations and attributions omitted). Neither standard has been met here. The conflict inherent between defendants' proposed defenses is not such that all the defendants would necessarily be convicted as a result of being tried together. What each defendant did is a very important issue in this case. The jury's ultimate determination of that issue will likely depend on more than whatever testimony defendants themselves may provide. The jury may choose to believe or disbelieve each testifying defendant concerning his own guilt and the guilt of others as it wishes without finding another defendant guilty on the basis of that testimony. Furthermore, although it is generally stated that the mere presence of hostility among defendants or a desire of one to exculpate himself by inculpating others is not enough to require severance, *see United States v. Madison, supra*, that is especially true in this case where the offenses charged include complex elements beyond the simple fact of assault. Thus, a jury may believe that one or more of the defendants were involved in the assault and that one or more were not involved without necessarily finding that those who were involved in the assault are guilty of the offenses charged in the indictment.

As a second ground in favor of severance, defendants assert that the government's promise not to use extrajudicial statements made by any of the defendants in its case-in-chief is insufficient to protect defendants' Sixth Amendment rights, because it leaves open the possibility that such statements could be used by the government in rebuttal without regard for the *Bruton* concerns. Regardless of whether the government has "elected" at this point in time to purge references to other defendants contained in any extrajudicial statements of a nontestifying defendant offered in rebuttal, it is clear by the terms of the Magistrate's order and the demands of *Bruton* that the government must purge such references or risk declaration of a mistrial should prejudicial references to other defendants occur. That is the effect of the government's decision to proceed with a joint trial in the face of defendants' severance motions. The *Bruton* concerns will thus be met by a remedy other than severance.

## THE MOTIONS TO DISMISS

The defendants have moved for dismissal of all or part of the indictment on several grounds. Included are contentions that their federal prosecution for the offenses charged in the indictment violates the Fifth Amendment's guarantee against double jeopardy; that the tavern in which the events underlying the indictment are alleged to have taken place was not a public facility within the scope of 18 U.S.C. § 245; and finally, that the present prosecution was not properly certified as required in 18

U.S.C. § 245(a)(1). The Court considers each contention in turn.

*Double Jeopardy*

The Court has reviewed in depth the argument of defendant Wojtalewicz (adopted by defendant Horvath) that his prosecution for the acts alleged in Counts 1, 3, and 4 of the indictment is barred by the double jeopardy prohibition because he was prosecuted and convicted in state court for those same acts as a party to the crime of battery that was committed against Mr. Adeshina and as a party to the crime of aggravated battery that was committed against Mr. Isua pursuant to Wis.Stat. §§ 939.05 and 940.19.

■ Without going into detail, suffice it to say that Wojtalewicz's argument that the state and federal offenses involved here may not each require proof of an element that the other does not (as required for successive prosecutions by the same sovereign, state or federal, for different offenses arising from the same transaction) may be correct as far as it goes. *See Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). Relying on the principle of dual sovereignty reaffirmed in *United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978), however, the Court concludes that the double jeopardy prohibition *does not* bar successive prosecutions by different sovereigns, as under the facts of this case, regardless of whether the *Brown* test is satisfied.

*The Public Facility Issue*

■ The defendants Bronk (joined by defendant Horvath) move to dismiss the entire indictment on the ground that the tavern in which the acts alleged in the indictment are said to have occurred was not a "facility which serves the public" within the meaning of that term in 18 U.S.C. § 245(b)(2)(F) because the tavern is not open to persons younger than the state drinking age pursuant to Wisconsin law. The Court agrees with the Magistrate's common sense construction of the word "public" to include all persons of the community not otherwise precluded by law from entering the premises.

*The Question of Improper Certification*

■ 18 U.S.C. § 245(a)(1) reads, in part, as follows:

Nothing in this section shall be construed as indicating an intent on the part of Congress to prevent any State, any possession or Commonwealth of the United States, or the District of Columbia, from exercising jurisdiction over any offense over which it would have jurisdiction in the absence of this section, nor shall anything in this section be construed as depriving State and local law enforcement authorities of responsibility for prosecuting acts that may be violations of this section and that are violations of State and local law. *No prosecution of any offense described in this section shall be undertaken by the United States except upon the certification in writing of the Attorney General or the Deputy Attorney General that in his judgment a prosecution by the United States is in the public interest and necessary to secure substantial justice, which function of certification may not be delegated.* (Emphasis added.)

The written certification for each of the five defendants states in similar form as follows:

CERTIFICATE OF THE ACTING DEPUTY ATTORNEY GENERAL OF THE UNITED STATES

I, Roger Clegg, hereby certify that in my judgment a prosecution by the United States of William P. Bronk under the provision of Title 18, United States Code, Section 245, is in the public interest and necessary to secure substantial justice. Signed the 26th day of October, 1984.

/s/ Roger Clegg
Roger Clegg
Acting Deputy Attorney General of the United States

On November 29, 1984, the defendants David and William Bronk moved to dismiss

prosecution for lack of valid certification. The defendants asserted that the certificate demonstrates that neither the Attorney General nor the Deputy Attorney General certified that this prosecution is an appropriate one. Rather, that function was delegated to one Roger Clegt [sic], an Acting Deputy Attorney General. The defendants Bronk claim that because the statute states the certification function may not be delegated, the prosecution against them was initiated without proper authorization and must be dismissed.

On November 30, 1984, the defendants Horvath and Wojtalewicz moved to dismiss, as did the defendant Stremkowski on December 1, 1984.

After the filing of memoranda of law by the parties, the Hon. James Groh, United States Magistrate in his report and recommendation of February 22, 1985 recommended that defendants' motion to dismiss for lack of valid certification be denied.

On March 7, 1985, the defendants Bronk filed with this Court their objections to the report and recommendation of the Magistrate, together with accompanying memorandum. Thereafter, on March 14, 1985, the United States filed its motion for an expedited review of the Magistrate's recommendation and report because trial has been scheduled for March 25, 1985.

Without reciting the arguments of counsel at length, this Court must conclude that the United States Supreme Court has already determined that this indictment must be dismissed without prejudice.

On May 13, 1974, the United States Supreme Court, in a unanimous opinion on an issue less clear and less sensitive than the one before this Court, determined that the Executive Assistant to the Attorney General of the United States was not empowered by statute to authorize applications for wiretapping orders, and, accordingly, the defendants' motion to suppress the evidence derived from an interception in contravention of 18 U.S.C. § 2516(1) was granted. *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). In discussing 18 U.S.C. § 245(a)(1),

Justice White, writing for the Court, at page 514, states as follows:

> But here the matter of delegation is expressly addressed by § 2516, and the power of the Attorney General in this respect is specifically limited to delegating his authority to "any Assistant Attorney General specially designated by the Attorney General." Despite § 510, Congress does not always contemplate that the duties assigned to the Attorney General may be freely delegated. *Under the Civil Rights Act of 1968, for instance, certain prosecutions are authorized only on the certification of the Attorney General or the Deputy Attorney General, "which function of certification may not be delegated." 18 U.S.C. § 245(a)(1).* Equally precise language forbidding delegation was not employed in the legislation before us; but we think § 2516(1), fairly read, was intended to limit the power to authorize wiretap applications to the Attorney General himself and to any Assistant Attorney General he might designate. This interpretation of the statute is also strongly supported by its purpose and legislative history. (Emphasis added.)

In affirming the authorization for wiretaps in *United States v. Pisacano*, 459 F.2d 259 (2d Cir.1972), Judge Friendly, writing for the Court, compared, at page 263, the language of 18 U.S.C. § 2516:

> The Attorney General, or any Assistant Attorney General specifically designated by the Attorney General, may authorize an application to a federal judge of competent jurisdiction for ... an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation.

with the non-delegable language before this Court in 18 U.S.C. § 245:

> Moreover, the procedures used clearly conformed with the letter of § 2516(1), particularly when this is read in light of the evidence, furnished by § 101(a) of the Civil Rights Act of 1968, *18 U.S.C. § 245(a)(1), that when Congress wished to prohibit delegation of any sort, it*

*knew how to do it.* This could well be "a case for applying the canon of construction of the wag who said, when the legislative history is doubtful, go to the statute." *Greenwood v. United States,* [350 U.S. 366, 76 S.Ct. 410, 100] L.Ed. 412 (1956) (Frankfurter, J.). (Emphasis added.)

This Court has also reviewed 28 U.S.C. § 510, Delegation of Authority:

> The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General.

The United States Court of Appeals for the Eighth Circuit recognized *Giordano* as limiting the delegation of authority found in section 510, where, at page 372 of *United States v. Agrusa,* 520 F.2d 370 (8th Cir.1975), Judge Heaney, in writing for the Court, stated as follows:

> Nothing in 28 U.S.C. § 515(a) or its legislative history evidences a congressional intent to limit the delegation authority of the Attorney General under 28 U.S.C. § 510. The delegation here to Assistant Attorney General Henry C. Petersen and Acting Assistant Attorney General John C. Keeney was in all respects proper. *See* 28 C.F.R. § 0.133; *May v. United States,* 236 F. 495, 500 (8th Cir.1916); *In re Grand Jury Subpoena of Alphonse Persico, supra,* 522 F.2d [41] at 66–67 [(2d Cir.1975) ]; *United States of America v. Philip Crispino,* 392 F.Supp. 764 (S.D.N.Y.1975); *compare United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).

Section 245, enacted after § 510, is a specific limit on the delegation authority of the Attorney General.

The government proceeds to discuss departmental regulations, and The Court has reviewed 5 U.S.C. § 301, Departmental Regulations:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

The power conferred by this section, of course, is administrative, and not legislative. *United States v. George,* 228 U.S. 14, 33 S.Ct. 412, 57 L.Ed. 712 (1913).

The district court provides an extensive discussion of the legality of delegation in *Hall v. Marshall,* 476 F.Supp. 262 (E.D. Penn.1979), *affirmed* 622 F.2d 578 (3d Cir. 1980):

> The LMRDA [Labor, Management, Reporting and Disclosure Act] is silent on the issue of subdelegation. While the legality of a subdelegation of an agency's power is primarily a function of legislative intent, the omission of any specific grant of power to delegate should not be construed as a denial of that power. *Fleming v. Mohawk Wrecking & Lumber Co.,* 331 U.S. 111, 67 S.Ct. 1129, 91 L.Ed. 1375 (1947); *Tabor v. Joint Board for Enrollment of Actuaries,* 566 F.2d 705, 708 (D.C.Cir.1977); *EEOC v. Raymond Metal Products Co.,* 385 F.Supp. 907, 921 (D.Md.1974). The Secretary of Labor, as the head of an executive department, has a "general power of delegation" under 5 U.S.C. § 301, *Wirtz v. Atlantic States Construction Co.,* 357 F.2d 442 (5th Cir.1966). Moreover, as the Court pointed out in *Atlantic States Construction, supra:*
>
> > Unless ... the statutory agent is hemmed in, the "administrative flexibility necessary for prompt and expeditious action on a multitude of fronts," *Fleming v. Mohawk Wrecking & Lumber Co.,* 331 U.S. [111] at 122, [67 S.Ct. 1129 at 1135,] points in the direction of more, not less, delegation. To argue for nondelegability in those situations in which Congress has not spoken explicitly and thereby insist upon personal performance by the Executive or the Chief Statutory Adminis-

trative Office envisages many unsatisfactory results. (Emphasis added.)

*Ratification*

Congress has indeed by its enactment of section 245 hemmed in the Attorney General. It has explicitly insisted upon personal performance. The United States appears to recognize that its action to undertake prosecution is suspect. It has argued that the decision of Mr. Clegg has been ratified. The only authority given for that subsequent certification cited by the government is found in *United States ex rel Machi v. United States Department of Probation and Parole*, 536 F.2d 179 (7th Cir.1976). The Court in *Machi* determined that the Attorney General's telephonic approval of a wire tap application met the provisions of 18 U.S.C. § 2516(1). The Court found that sufficient compliance with the established statutory procedure was had where a discussion was held with Attorney General Mitchell prior to initiation of the interception.

Certainly, this is not the situation before the Court. Carol Dinkins signed her affidavit on January 11, 1985, almost two and one-half months *after prosecution* was undertaken. Perhaps she is suggesting that two and one-half months after a wiretap the Attorney General could give his approval and thereby validate the interception. In any event, her argument for ratification is less than substantial and acknowledges the deficiency in the original undertaking.

Finally, the government suggests that *United States v. Smith*, 532 F.2d 158 (10th Cir.1976) sustains its position. *Smith* deals with 18 U.S.C. § 6003, which allows a United States Attorney to make an application requiring a hostile witness to give testimony. *Smith* tells us that an *Assistant* United States Attorney, pursuant to 28 C.F.R. § 0.130, may perform this function. This has no similarity with the provisions of 18 U.S.C. § 245.

The government is attempting to categorize a loud and clear pronouncement of Congress with a normal everyday administrative duty which may be performed by an Assistant United States Attorney.

The cases and regulations cited by the Attorney General clearly indicate he does not understand the clear voice of the legislative branch of this government. He attempts to mute that voice with meaningless, circuitous, technical and ineffective regulations which, in vain, attempt to change the intent of Congress.

The Attorney General and his or her deputy can, indeed, designate assistants; but they cannot delegate to those assistants functions which Congress has clearly and precisely declared to be nondelegable.

The effect of the provision in § 245(a) prohibiting delegation of the certification function is to require that either the Attorney General or the Deputy Attorney General *personally* certify that a prospective prosecution under the statute is in the public interest and necessary to obtain substantial justice. That requirement undoubtably has its roots in the sensitivity of Congress to the criticism that the law "federalized" criminal offenses that had been policed exclusively by the states for almost 200 years. Several times during the exhaustive floor debate in the Senate, proponents of H.R. 2516 as reported out by the Senate Judiciary Committee emphasized that federal prosecution under the statute was to be the exception, rather than the rule, and was to be invoked only at the highest and most visible level of the Executive Branch. As Senate Majority Leader Mike Mansfield stated on February 16, 1968,

> The bill grants no rights that do not already exist. The bill, after exhaustive consideration in committee, was drawn carefully and limits severely the Federal authority. It is a simple proposal. In essence, it merely permits a Federal prosecution—rather than a prosecution in the county courthouse—but only where the Federal involvement is absolutely essential to insure substantial justice—a need demonstrated repeatedly in cases of crimes committed against the free exercise of already guaranteed

rights. In fact, the bill goes to great lengths to preserve the current balance in the Federal-State judicial system—permitting the Federal prosecution when and only when, the climate in a local community unmistakably requires such a Federal role if justice is to be done. 114 Cong.Rec. S 3,235 (1968). Less than one week later, he reiterated the same point:

In essence it protects the rights granted by the Civil Rights Acts of 1964 and 1965 and, more fundamentally, by the Constitution itself. Those rights must not be frustrated. They must not be made the prey of violence or intimidation. Under H.R. 2516, if interference of this kind should occur, the trial for assault or murder or intimidation may—let me repeat that word "may"—take place in the Federal courthouse in the community of the crime rather than in the county courthouse; but even then only if the Attorney General determines that such a forum is necessary to effectuate substantial justice.

114 Cong.Rec. S 3,806 (1968). Given the unambiguous language of the statute and the legislative history quoted above, it would frustrate the clear intent of Congress for the Court to allow a prosecution to go forward on the basis of anything less than strict compliance with the statute.

## CONCLUSION

The Magistrate has been subjected to a plethora of motions, many of which were less than substantial. They have now been resolved by this order, with the expectation, of course, that they will again be raised in the event the United States should again undertake prosecution of these offenses. To eliminate the attendant delays which these same perfunctory motions will once again attempt to cause, all dispositive motions concerning this matter will be referred by the Magistrate directly to the Court once a preliminary pre-trial conference may be held.

The Court is of the opinion that a timely reindictment would not cause an unnecessary delay in prosecution which would inherently prejudice the defendants, particularly where from its examination of the entire record it is determined that several of the defendants are primarily interested in creating unnecessary delay by filing less-than-substantial motions and may not be prepared to proceed to trial at this time for the lack of further investigation, which they appear to demand.

## ORDER

IT IS ORDERED that the report and recommendation of the United States Magistrate to deny the motions of the defendants to dismiss the indictment for the failure to comply with the requirement of certification is REJECTED.

IT IS FURTHER ORDERED that the reports and recommendations of the United States Magistrate as they concern those other matters addressed herein are APPROVED.

IT IS FURTHER ORDERED that for want of compliance with the certification requirement provided in 18 U.S.C. § 245(a)(1), the indictment against the defendants is DISMISSED without prejudice, and leave to reindict pursuant to the provisions of 18 U.S.C. § 245(a)(1) is GRANTED where deemed appropriate.

IT IS FURTHER ORDERED that the defendants' motions to review the documentation upon which a valid certification to undertake prosecution in this matter may be made is DENIED as moot.