UNITED STATES of America, Plaintiff,

v.

James SALERNO, et al., Defendants.

No. 91 CR 429.

United States District Court,
N.D. Illinois, E.D.

Sept. 18, 1991.

Judith F. Dobkin, U.S. Attorney's Office, Chicago, Ill., for U.S.

William Kenneth Hedrick, Skokie, Ill., for James Salerno.

Stephen Levy, Block, Levy and Associates, Chicago, Ill., for Albert Castellano, Sr.

## ORDER

ALESIA, District Judge.

Defendant, James Salerno ("Salerno"), has filed twelve pretrial motions in this criminal action. The Government has filed two consolidated responses.[1] Salerno has not filed a reply. We rule on each of Salerno's motions in turn.

I. *Motion to Require Notice of Intention to Use Identification Testimony at Trial* [2]

In this motion, Salerno seeks an order compelling the Government to give notice of its intention to use eyewitness identification testimony against him. Salerno further states that if such identification evidence exists, he may file a motion to suppress. Salerno cites no legal authority, rule of criminal procedure or rule of evidence in support of his request.

Not surprisingly, the Government objects to this request and argues that Federal Rule of Criminal Procedure 16 does not

---

1. Instead of filing one consolidated brief, the Government has filed two response briefs to address what it styles, Salerno's "pretrial non-discovery motions" and Salerno's "pretrial discovery motions."

2. In the interest of maintaining a clear record, we label these motions as they are labelled by Salerno.

require disclosure of eyewitness testimony. Notwithstanding this objection, the Government represents that it will comply with its obligations under the Jencks Act and will disclose any prior witness statements within the purview of the Jencks Act. Based on this representation, this motion is denied in part because Salerno is not entitled to the information requested, and denied in part as moot.

## II. *Motion in Limine Regarding the Admissibility of Co–Conspirator Declarations*

In this motion, Salerno seeks an order directing the Government to submit a *Santiago* proffer detailing any co-conspirator statements which it intends to introduce or, alternatively, to present evidence of such co-conspirator statements at a pretrial hearing. As the Government has submitted its written *Santiago* proffer, this motion is denied as moot.

■■■■ The Court now addresses the admissibility of the co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E). As is required by Rule 104(a) of the Federal Rules of Evidence, before admitting these statements into evidence, this Court is required to make a preliminary determination that the Government has demonstrated, by a preponderance of evidence, that "(1) a conspiracy existed, (2) the defendant and declarant were members thereof, and (3) the proffered statement(s) were made during the course of and in furtherance of the conspiracy." *United States v. Cox*, 923 F.2d 519, 526 (7th Cir. 1991); *United States v. Reiswitz*, 941 F.2d 488, 496–497 (7th Cir.1991). In making this determination, we may examine the hearsay statements sought to be admitted. *Bourjaily v. United States*, 483 U.S. 171, 181, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987). Equally important, even if the statements are made in the embryonic stages of the conspiracy, they are admissible against those who join the conspiracy later, so long as the statements are made during the course of, and in furtherance of the conspiracy. *See United States v. Potts*, 840 F.2d 368, 371 (7th Cir.1987).

■■ The Government submitted a five-page statement of the facts and statements establishing the conspiracy and Salerno's participation in the conspiracy. The Court has reviewed the Government's submission and is satisfied that the Government has met its burden to establish the elements set forth above.

According to the Government's written proffer, the existence of the conspiracy and Salerno's membership in it will be proved by the testimony of two of Salerno's co-defendants, Albert Castellano, Sr. ("Castellano") and Larry Schulten ("Schulten"), who have recently changed their pleas to guilty. Castellano will testify to various conversations he had with Salerno regarding Salerno's purchase of illegal explosives and his introduction of Salerno to Schulten, an explosives maker. Castellano will further testify that Salerno informed him that the person who ordered the bomb was not happy with the results.

Similarly, Schulten will testify to conversations he had with Salerno in which the details of the bomb purchase were discussed. Schulten will also testify that he recognized certain fragments recovered from the Dunne bombing as parts of substances he used to make the bomb he sold Salerno.

Finally, the Government will introduce tape-recorded conversations between Castellano and Salerno, which establish that Salerno picked up the bomb at Castellano's residence in Indiana and that Schulten then showed Salerno how to use the bomb. Furthermore, the tapes will reveal that in response to Castellano's inquiry about how the individual who ordered the bomb would stand up against government pressure, Salerno responded, "Great ... 100 percent."

This Court's examination of the Government's written proffer reveals that the Government has established by a preponderance of the evidence, that the co-conspirator statements at issue fall within the scope of Rule 801(d)(2)(E) of the Federal Rules of Evidence. Based upon the *Santiago* proffer, it is more likely than not that a conspiracy existed, that Salerno partici-

pated in the conspiracy, and that statements were made "during the course of" and "in furtherance of" the conspiracy.

■ In this circuit, the trial judge has the option of conditionally admitting the co-conspirator declaration evidence, subject to actual proof of these matters at trial. *See United States v. Santiago,* 582 F.2d 1128, 1131 (7th Cir.1978); *United States v. Cox,* 923 F.2d at 526. This Court chooses to exercise that option. Accordingly, the co-conspirator statements offered by the Government are conditionally admitted under Rule 801(d)(2)(E) of the Federal Rules of Evidence, subject to actual proof of the conspiracy at trial.

### III. *Motion for Pretrial Hearing to Determine the Admissibility of Declarations of Alleged Co–Conspirators*

Next, Salerno requests a hearing to determine the admissibility of co-conspirator statements pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence. As set forth above, the Court has conditionally admitted the co-conspirator statements under Fed.R.Evid. 801(d)(2)(E). Therefore, Salerno's motion for a pretrial hearing is denied.

### IV. *Motion to Require Notice of Intention to Use Other Crimes, Wrongs, or Acts Evidence*

■ Salerno also seeks an order requiring the Government to disclose prior to trial "bad acts" evidence which the Government intends to use in its case-in-chief, for impeachment purposes, or in rebuttal pursuant to Federal Rules of Evidence 404(b) and 608(b). Essentially, the evidence which Salerno seeks falls into two categories. First, Salerno seeks disclosure of any "crimes, wrongs, or acts," as that phrase is used in Rule 404(b) of the Federal Rules of Evidence. In response, the Government represents that it will provide such notice as is required by the Court. However, the Government argues that it is not required to provide notice of its intent to use Rule 404(b) evidence in rebuttal. We agree. *See United States v. Dominguez,* 131 F.R.D. 556, 557 (N.D.Ill.1990). Further-

more, as the Government has informed Salerno and the Court of Rule 404(b) evidence which it intends to use in its case-in-chief through the submission of its Rule 404(b) proffer, we deny this portion of Salerno's request in part because he is not entitled to such information, and in part because his motion is moot.

■ Second, Salerno seeks disclosure of "specific instances of conduct" of any defendant as that phrase is used in Rule 608(b) of the Federal Rules of Evidence. In response to this request, the Government essentially argues that Rule 16 of the Federal Rules of Criminal Procedure does not require the Government to provide notice of its intention to use such evidence during cross-examination. We agree that Federal Criminal Rule 12(d)(2) only requires that the Government provide notice of its intent to use such evidence in its case-in-chief. *See United States v. Climatemp, Inc.,* 482 F.Supp. 376 (N.D.Ill.1979), *aff'd sub nom., United States v. Reliable Sheet Metal Works, Inc.,* 705 F.2d 461 (7th Cir.1983), *cert. denied,* 462 U.S. 1134, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983); *United States v. Dominguez,* 131 F.R.D. at 557; *United States v. Cole,* 707 F.Supp. 999, 1004 (N.D.Ill.1989). The Government is not required to disclose whatever evidence it may use pursuant to Rule 608(b) to impeach Salerno during cross-examination if he should testify at trial. Accordingly, this portion of Salerno's motion for discovery is denied.

■ The Court now addresses the admissibility of the Government's "other crimes" evidence pursuant to Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) excludes evidence of other crimes, wrongs or acts, "to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). However, evidence of other wrongs or acts is admissible to prove such things as intent, plan or knowledge. Fed.R.Evid. 404(b). This circuit has established a four-part test to analyze the admissibility of "other acts" evidence under Rule 404(b). Other crimes evidence may be admitted where the following is established:

(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Scop,* 940 F.2d 1004, 1008 (7th Cir.1991); *United States v. Briscoe,* 896 F.2d 1476, 1499 (7th Cir.1990) (citing *United States v. Zapata,* 871 F.2d 616, 620 (7th Cir.1989)).

In the case at bar, the Government will offer the testimony of Salerno's co-defendant, Castellano, who will establish that Salerno purchased illegal explosives from him in the months prior to the dates alleged in the indictment. The Government argues that this evidence is admissible under Rule 404(b) for two reasons: First, this evidence establishes Salerno's knowledge that Castellano trafficked in illegal explosives. Second, the Government asserts that this evidence demonstrates the relationship of trust which existed between Salerno and Castellano. We have reviewed the Government's Rule 404(b) proffer, and are satisfied that the requisite elements for admissibility have been established.

As an initial matter, Count I of the indictment charges Salerno with conspiracy to transport a pipe bomb in interstate commerce with knowledge and intent that it would be used to destroy a vehicle. Clearly, Castellano's testimony will specifically show that Salerno knew the nature of Castellano's business and knew where to purchase explosives. In addition, the Government argues that Castellano's testimony will demonstrate to the jury how the conspiracy developed, as well as, Salerno's re-

lationship with and trust of those who dealt in such explosives. We agree. *See United States v. Scop,* 940 F.2d 1004, 1009; *United States v. Alamo,* 872 F.2d 202, 297 (7th Cir.1989). In this Court's view, this testimony will show Salerno's intent, knowledge and practice under Rule 404(b). *See United States v. Cooper, et al.,* 942 F.2d 1200, 1205–1206 (7th Cir.1991).

Furthermore, the Government asserts that Castellano's testimony will show that Salerno's prior purchases of illegal explosives occurred within the same year and one or two years prior to the acts charged in the indictment. We find that this testimony is sufficient to support a finding by the jury that Salerno committed similar acts. Moreover, we are convinced that these acts occurred close enough in time to be admissible under Rule 404(b).

Finally, the evidence is highly probative because it reveals a pattern of past dealings in illegal explosives between Castellano and Salerno. Based on our review of the Government's 404(b) proffer, the tendered evidence concerns similar acts and is not unduly prejudicial or inflammatory. Therefore, the Government's evidence which demonstrates Salerno's prior purchases of illegal explosives from Castellano, is admissible under Rule 404(b) of the Federal Rules of Evidence.[3]

## V. *Motion to Dismiss Indictment*

Salerno has filed a motion to dismiss the indictment arguing that FBI interviews with his wife, Mary Salerno, and her subsequent testimony before the grand jury violated defendant's husband-wife privilege. Salerno cites no case law in support of his motion. Equally inappropriate, Salerno fails to identify which privilege he invokes. We agree with the Government, that Salerno ostensibly seeks to invoke the privilege protecting confidential marital communications.[4]

---

**3.** In light of this ruling, Salerno may submit a proposed limiting instruction with respect to this "other acts" evidence, on or before September 24, 1991.

**4.** The other marital privilege recognized by the federal courts is the privilege against adverse

spousal testimony. The Supreme Court in *Trammel v. United States,* 445 U.S. 40, 53, 100 S.Ct. 906, 914, 63 L.Ed.2d 186 (1980), unequivocally held that only the witness-spouse is the holder of the privilege. Logically, Salerno cannot assert a violation of this privilege.

We are aware that under Rule 501 of the Federal Rules of Evidence, the viability and admissibility of any privilege "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501. Similarly, we are also aware of the Supreme Court's admonition that these privileges are to be narrowly construed. *See Trammel v. United States,* 445 U.S. at 50–51, 100 S.Ct. at 912–913; *United States v. Nixon,* 418 U.S. 683, 709–10, 94 S.Ct. 3090, 3108–3109, 41 L.Ed.2d 1039 (1974).

▓▓▓▓▓ Clearly, confidential communications between a husband and wife made during a valid marriage are privileged. *Blau v. United States,* 340 U.S. 332, 333, 71 S.Ct. 301, 302, 95 L.Ed. 306 (1951). Further, communications between spouses are presumed confidential. *Blau v. United States,* 340 U.S. at 333, 71 S.Ct. at 302. It is equally clear, however, that if a communication between spouses is not intended to be confidential, it is not privileged. *Wolfle v. United States,* 291 U.S. 7, 14, 54 S.Ct. 279, 280, 78 L.Ed. 617 (1934). Moreover, the privilege "extends only to utterances, and not to acts." *Pereira v. United States,* 347 U.S. 1, 6, 74 S.Ct. 358, 361, 98 L.Ed. 435 (1954). In other words, the privilege does not preclude a spouse from testifying about his physical observations. *United States v. Lustig,* 555 F.2d 737, 748 (9th Cir.1977), *cert. denied,* 434 U.S. 926, 98 S.Ct. 408, 54 L.Ed.2d 285 (1978); *Barsky v. United States,* 339 F.2d 180, 182 (9th Cir.1964). Nor is a spouse prevented from testifying about his own activities or conduct. Finally, any disclosure to or in the presence of third parties, vitiates the marital communications privilege. *Pereira v. United States,* 347 U.S. at 6, 74 S.Ct. at 361.

Guided by these standards, we address Salerno's motion to dismiss the indictment. This Court has conducted an *in camera* review of Mrs. Salerno's testimony before the grand jury and of the FBI's reports of interviews with Mrs. Salerno. This Court's review reveals that Mrs. Salerno's testimony related to her own actions or, observa-

tions she made about her husband's activities. We agree with the Government, that Mrs. Salerno did not divulge any confidential marital communications, nor was she asked questions which would require her to disclose such communications. Accordingly, Salerno's motion to dismiss is denied.

### VI. *Motion for Production of Union-Related Data*

In his motion for production of union-related data, Salerno seeks a wide variety of information including: (1) "allegations and evidence of wrongdoing by [Charles] Dunne and the other two officials," *i.e.,* Timothy Bresnahan and Edmond J. Ryan; (2) "all data regarding and identifying persons ... believed to have motivation to harm Dunne" or other Local 134 officials; (3) any leads regarding the "perpetrators" of the June 1987 car bombing; and (4) any data regarding any union disciplinary action or other action taken against Dunne, Bresnahan or Ryan. Once again, Salerno wholly fails to cite any supporting authority for this overly broad request. We deny this motion for two reasons.

First, to the extent that Salerno's request for information may fall within the scope of *Brady* and *Giglio,* the Government acknowledges its continuing obligations and promises to abide by the dictates of *Brady* and *Giglio.* Based on these representations, the Court denies Salerno's motion as moot.

▓▓▓ Second, Salerno seeks information to which he is simply not entitled. For example, the Government states that it does not intend to call Bresnahan and Ryan as witnesses at trial and that these individuals have no relation to the present case (requests numbered 1 and 4). Neither *Brady* nor the criminal discovery rules requires the Government to disclose irrelevant and immaterial information. Equally important, *Brady* and its progeny only obligate the Government to produce exculpatory information, not investigative leads (requests numbered 2 and 3). Because Salerno offers no reason for discovering this information, nor cites any authority in support of

these requests, this portion of Salerno's motion is denied.

## VII. *Motion for Discovery and Inspection*

Salerno requests that the Court order the Government to produce a variety of information in his motion for discovery and disclosure. The Court addresses each category of documents in turn.

### (1) Statements of Defendant

The Government does not object to Salerno's first and second requests with respect to his own statements, but does object to Salerno's requests for all statements made by any co-defendant or co-conspirator to government agents or third parties. Based on the Government's representation that it has provided Salerno with all of his statements within the purview of Rule 16 of the Federal Rules of Criminal Procedure, including all consensually made tapes, transcripts of tapes and all FBI reports of interviews, this portion of Salerno's motion is denied as moot.

### (2) Statements of Co–Defendants, Co–Conspirators or Witnesses

 Additionally, Salerno has made very broad and far-reaching requests pursuant to Rule 16 which are not limited to his oral or written statements. For example, in his first and second requests, Salerno not only seeks to discover any statements made by him, but he also requests all written or oral statements made by various third parties, including co-defendants or co-conspirators[5] to government agents and others. Unless they encompass exculpatory or impeaching material under *Brady*, however, these statements are not discoverable under Rule 16. This portion of the motion is accordingly, denied.

 Similarly, in his sixth request, Salerno seeks "statements ... of persons who gave information regarding defendant or the facts alleged in the indictment who are not prospective witnesses for the govern-

ment." With respect to third-parties who are not expected to be government witnesses, statements made by them, even though they may incorporate a defendant's own statements, are not discoverable under Rule 16. *See United States v. Zarattini*, 552 F.2d 753, 759 (7th Cir.), *cert. denied*, 431 U.S. 942, 97 S.Ct. 2661, 53 L.Ed.2d 262 (1977); *United States v. Bronk*, 604 F.Supp. 743, 746 (W.D.Wis.1985). Accordingly, this request is denied.

### (3) Documents and Tangible Objects

In response to requests four and seven, the Government represents that it has made available, and continues to make available for defense counsel's inspection, all tangible evidence it intends to introduce at trial. Moreover, the Government represents that it already has provided Salerno with tests and examinations. As the Government has already produced the materials requested, this portion of Salerno's motion is denied as moot.

### (4) Witness Lists

 In his third request, Salerno seeks the names of all "persons to whom Defendant made oral statements concerning the alleged offense." To the extent that these individuals may be prospective government witnesses, this request exceeds the parameters of the Jencks Act, 18 U.S.C. § 3500, and Rule 16. In fact, the Government correctly points out that in the report accompanying the 1975 amendment to Rule 16, the conference committee expressed concern that requiring disclosure of names and addresses of witnesses would discourage witnesses from testifying and lead to "improper contact directed at influencing their testimony." (Government Response to Defendant's Discovery Motions, p. 3). We agree. *See United States v. Bouye*, 688 F.2d 471, 474 (7th Cir.1982); *United States v. Napue*, 834 F.2d 1311, 1377 (7th Cir. 1987). Accordingly, this portion of Salerno's request is denied.

 Finally, Salerno requests the production of a list of all persons who were

---

**5.** Based on the Government's written *Santiago* proffer, the Court has conditionally admitted co-

conspirator declaration evidence subject to actual proof at trial.

interviewed by government agents but who will not be called as government witnesses at trial. Clearly, Rule 16 does not entitle a defendant to this information. Furthermore, the Court fails to see how this information would in any way help Salerno prepare his defense. Accordingly, this portion of Salerno's request is denied.

Although the Court has no reason to believe that the Government has not produced to Salerno all statements made by him which fall within the purview of Rule 16, and the Government's response implicitly suggests that the Government has fully complied with Salerno's request at least to the extent required by Rule 16, in the interest of maintaining a clear record, the Court orders the Government to produce all statements made by or attributable to Salerno which fall within the purview of Rule 16, if they have not already been produced. To the extent that the Government has complied with the dictates of Rule 16, we deny as moot Salerno's fourth and seventh requests. Additionally, we deny in part because Salerno is not entitled to such information and in part as moot, Salerno's first and second requests. Finally, we deny Salerno's third, fifth and sixth requests.

### VIII. *Motion for Disclosure of Exculpatory Evidence Including Impeaching Information*

In this motion, Salerno seeks an order compelling the Government to disclose a wide array of information prior to trial under the authority of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

First, to the extent that Salerno's requests for information fall within the scope of *Brady* and *Giglio,* the Government's promises to comply with the dictates of *Brady* and *Giglio* render Salerno's motion moot. In its response, the Government has acknowledged its continuing obligations under *Brady* and *Giglio.* In addition, the Government has promised to produce all impeaching information within the scope of *Giglio,* if any exists, in accordance with the Jencks Act. Based on these representations, the Court denies as moot those portions of Salerno's motion which seek to discover exculpatory or impeaching information under the authority of *Brady* and *Giglio* (numbered paragraphs 1, 2(a), 3(a), 3(b), 5, and 7).

■ Many of Salerno's remaining requests fall far afield of *Brady, Giglio,* and Rule 16 of the Federal Rules of Criminal Procedure and, therefore, we deny them. As the Supreme Court observed in discussing the parameters of *Brady* and its progeny:

> The *Brady* rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial....

*United States v. Bagley,* 473 U.S. 667, 675, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). *Brady,* then, entitles a defendant to discover exculpatory or impeaching information.

The Government objects, however, that several of Salerno's requests go beyond the parameters of *Brady.* We sustain the Government's objection to Salerno's overbroad requests for state and federal agency investigative files, and personnel files, for all government witnesses (numbered paragraphs 2(b) and 6). Further, to the extent that Salerno's motion seeks pretrial disclosure beyond the ambit of *Brady* and *Giglio,* the Court denies these requests because he is not entitled to discover these materials (numbered paragraphs 4 and 8).

In addition, the Government has represented that it currently knows of no materials in its possession which exculpate Salerno, but that if any become known, the Government will produce them to Salerno upon discovery. Therefore, we deny Salerno's request number 10. However, the Government is reminded that any doubt as to whether disclosure is required should be resolved in favor of disclosure. Specifical-

ly, the Government is ordered to release the names of individuals, if any exist, who indicated that Salerno was not involved in the events alleged in the indictment (numbered paragraph 9). The Government shall provide Salerno with this information on or before September 24, 1991.

### IX. *Motion for Preservation of Agents' Notes*

This motion is denied as moot based on the Government's representation that the agents have been instructed to preserve their handwritten notes.

### X. *Motion for Leave to File Additional Motions*

■ In this motion, Salerno seeks an order allowing him to reserve his right to file additional motions. Rule 12(f) of the Federal Rules of Criminal Procedure provides, in pertinent part, that "[f]ailure by a party ... to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c), ... shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver." Fed.R.Crim.P. 12(f). In the event that additional motions become necessary, and provided Salerno makes the requisite showing under Rule 12(f), the Court will, at that junction, entertain such a motion. Therefore, Salerno's motion is denied.

### XI. *Motion to Produce Handwritten Notes, Memoranda and Records of Interviews with Defendant and Others*

While this motion is not the model of clarity, Salerno essentially requests that the Court order the Government to disclose to the defense the transcript of Mrs. Salerno's testimony before the grand jury, as well as, all materials relating to interviews with defendant's wife.[6] Further, Salerno

seeks disclosure of the federal agents' notes relating to interviews with defendant. To exacerbate matters, Salerno cites no case law nor does he invoke any Federal Rule of Criminal Procedure in support of this broad request.

Rule 6(e)(2) codifies the general rule of secrecy which has traditionally shrouded grand jury proceedings. Fed.R.Crim.P. 6(e)(2). Rule 6(e)(3), however, sets forth assorted exceptions to this general rule of secrecy, and authorizes disclosure otherwise prohibited under certain circumstances. The circumstances include: "(i) when so directed by a court preliminary to or in connection with a judicial proceeding" or "(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Fed.R.Crim.P. 6(e)(3)(C).

■ Discoverable materials falling within the scope of *Brady* and the Jencks Act also constitute exceptions to the general rule of grand jury secrecy. Thus, a defendant seeking pretrial disclosure of grand jury transcripts other than those he can obtain as *Brady* material or under the Jencks Act must demonstrate that a "particularized need" for the materials outweighs the policies supporting the secrecy of grand jury proceedings. *See, e.g., In re Matter of Grand Jury Proceedings, Special September, 1986*, 942 F.2d 1195, 1198 (7th Cir.1991).

In this case, Salerno argues that absent disclosure of the requested grand jury and interview materials he will be unable to "adequately prepare for trial." Aside from this unsubstantial assertion, Salerno mentions that he needs to evaluate the interviews with his wife "for violations of the husband-wife privilege." This argument has been rejected without merit.[7] In point

---

6. We note for the record that it is not entirely clear whether Salerno does in fact seek disclosure of Mrs. Salerno's grand jury testimony. However, to ensure that the record is clear, we address this request.

7. As previously discussed in this Order, this Court, after an *in camera* review of the federal

grand jury proceedings and the FBI 302 reports of interviews with Mrs. Salerno, denied Salerno's motion to dismiss the indictment on the alleged grounds of violation of the husband-wife privilege.

of fact, Salerno has wholly failed to demonstrate any "particularized need" for the grand jury testimony. Salerno's motion for disclosure of grand jury testimony is denied.

■ Salerno also seeks an order directing the Government to produce *instanter* all interview notes, memoranda, tapes or transcripts with Salerno's wife. We sustain the Government's objection that rough drafts or handwritten drafts not adopted by the witness are not discoverable under the Jencks Act. *See United States v. Starnes*, 644 F.2d 673, 680–81 (7th Cir.), *cert. denied*, 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981). Moreover, this request appears to be academic based upon the Government's promise to disclose all "final typed or written statements of witnesses in accordance with the Jencks Act." (Government's Response to Defendant's Discovery Motions, p. 11). Based on this representation, the Court denies as moot this portion of Salerno's motion.

Finally, we deny Salerno's request for the production of the agents' notes and any other records relating to interviews with defendant. Notwithstanding Salerno's assertion that the 302's were "sketchy", the Government represents that these reports "precisely" reflect the substance of the interviews. Moreover, the Government has complied with its obligations under the Jencks Act, as it transmitted via facsimile, on July 25, 1991, the 302 reports to defense counsel. This portion of Salerno's motion is denied as moot.

XII. *Motion for Production of Expert Opinions and Supporting Data*

■ In this motion, Salerno requests, again without citation to any authority or rule, that the Court order the Government to provide him with the opinion testimony and names of any expert witnesses upon which the Government intends to rely, as well as, a list of the texts or authorities relied upon for said opinions. In addition, Salerno asks for copies of exhibits or other data reflecting said expert opinions.

The Government opposes the request, responding that it has no obligation to disclose names of prospective witnesses unless defendant "shows that such disclosure is both material to the preparation of the defense and reasonable in light of all the circumstances." (Government's Response to Defendant's Discovery Motions, p. 12). As Salerno has neither established materiality nor reasonableness, this portion of his request is denied.

Moreover, the Government represents that in compliance with its obligations under Federal Criminal Rule 16(a)(1)(D) and Local Rule 2.04, it has previously provided defense counsel with reports of examinations and tests. Further, the Government promises to immediately produce to defendant any additional and newly obtained materials within the purview of these rules. Finally, the Government further represents that if it calls any expert witnesses, it will abide by its obligations under the Jencks Act and disclose the expert witnesses' previous statements. Based on these representations, the Court denies as moot this portion of Salerno's motion.

### CONCLUSION

For the reasons outlined, each of the following motions of Salerno is denied in part because it is moot and in part because Salerno is not entitled to the information requested in it: his motion to require notice of intention to use identification testimony at trial; his motion to require notice of intention to use other crimes, wrongs or acts evidence; his motion for production of union related data; his motion for discovery and inspection; his motion for disclosure of exculpatory evidence; his motion to produce handwritten notes, memoranda and records of interview with defendant and others; and his motion for production of expert opinions and supporting data. Furthermore, each of the following motions of Salerno is denied as moot: his motion *in limine* regarding the admissibility of co-conspirator declarations; and his motion for preservation of agents' notes. In addition, each of the following motions of Salerno is denied: his motion for a pretrial hearing to determine the admissibility of co-conspirator declarations; his motion to dis-

miss the indictment; and his motion for leave to file additional motions.

Finally, we conditionally admit the co-conspirator statements offered by the Government under Rule 801(d)(2)(E) of the Federal Rules of Evidence, subject to actual proof of the conspiracy at trial. By the same token, the Government's "other acts" evidence is admissible under Rule 404(b) of the Federal Rules of Evidence.